CATHERINE C. MITCHILL, Respondent, *v.* CHARLES LATH et al., Appellants.

**Contract — specific performance — oral agreement so closely related to subject dealt with in written contract that it may not be proved — where it is evident that plaintiff was the principal, contract made with her husband must be treated as if made by her.**

1. Where plaintiff entered into a written agreement to purchase real property from defendants containing precise provisions as to the obligations of each of the parties thereto, a collateral oral agreement on the part of defendants to remove an ice house owned by them and facing the property sold is so closely related to the subject dealt with in the written agreement that it may not be proved in an action to compel its specific performance.

2. Nor is this changed by the fact that while the collateral agreement was made by the plaintiff, the contract of sale was with her husband and no assignment of it from him appears, where the deed was given to her and it is evident that in the transaction she was the principal from beginning to end. The contract must be treated as if in form, as it was in fact, made by her.

*Mitchell* v. *Lath,* 220 App. Div. 776, reversed.

(Argued January 10, 1928; decided February 14, 1928.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 27, 1927, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term in an action to compel specific performance of an alleged contract to remove an ice house.

*James G. Meyer, John T. Kelly* and *Daniel A. Dugan* for appellants. The court erred in destroying the contract by receiving evidence of prior negotiations. (*Newburger* v. *Am. Surety Co.,* 242 N. Y. 134; *Filkins* v. *Whyland,* 24 N. Y. 338; *Eighmie* v. *Taylor,* 98 N. Y. 288; *Emmett* v. *Penoyer,* 151 N. Y. 564; *Sturmdorf* v. *Saunders,* 117 App. Div. 762; *Marsh* v. *McNair,* 99 N. Y. 174; *Lossing* v. *Cushman,* 123 App. Div. 693; 195 N. Y. 386.) The case at bar is not within the exceptions to the general rule that evidence of parol agreements may not be received to contradict or vary the terms of an instrument in writing. (*Thomas* v. *Scutt,* 127 N. Y. 133; *House* v. *Walch,* 144 N. Y. 418; *Mead* v. *Dunleavy,* 174 N. Y. 108; *Studwell* v. *Bush Co.,* 206 N. Y. 416; *Newburger* v. *American Surety Co.,* 242 N. Y. 134.)

*Arthur H. Haaren* for respondent. Specific performance of defendants' oral contract was properly granted below. (*Rintelen* v. *Schaefer,* 158 App. Div. 477.) The parol evidence rule has not been violated and no other ground for reversal has been shown. (*Newburger* v.

*Am. Surety Co.*, 242 N. Y. 134; *Indelli* v. *Lesster*, 130 App. Div. 548; *Finkle* v. *Lasher*, 178 App. Div. 471; *Brown* v. *De Graff*, 183 App. Div. 177; *Amer. Aniline Products Co.* v. *Mitsui & Co.*, 190 App. Div. 485; *Taylor* v. *Hopper*, 62 N. Y. 649; *Lobel* v. *Van Hoose*, 141 N. Y. Supp. 490; *M'Crea* v. *Purmort*, 16 Wend. 460; *Hocking Valley Ry. Co.* v. *Barbour*, 192 App. Div. 654; *Post* v. *Thomas*, 180 App. Div. 627.)· The injunction prayed for was properly granted. (*Musgrave* v. *Sherwood*, 23 Hun, 669.)

ANDREWS, J.  In the fall of 1923 the Laths owned a farm. This they wished to sell.  Across the road, on land belonging to Lieutenant-Governor Lunn, they had an ice house which they might remove.  Mrs. Mitchill looked over the land with a view to its purchase.  She found the ice house objectionable.  Thereupon " the defendants orally promised and agreed, for and in consideration of the purchase of their farm by the plaintiff, to remove the said ice house in the spring of 1924."  Relying upon this promise, she made a written contract to buy the property for $8,400, for cash and a mortgage and containing various provisions usual in such papers.  Later receiving a deed, she entered into possession and has spent considerable sums in improving the property for use as a summer residence.  The defendants have not fulfilled their promise as to the ice house and do not intend to do so.  We are not dealing, however, with their moral delinquencies. The question before us is whether their oral agreement may be enforced in a court of equity.

This requires a discussion of the parol evidence rule — a rule of law which defines the limits of the contract to be construed.  (*Glackin* v. *Bennett*, 226 Mass. 316.)  It is more than a rule of evidence and oral testimony even if admitted will not control the written contract (*O'Malley* v. *Grady*, 222 Mass. 202), unless admitted without objection. (*Brady* v. *Nally*, 151 N. Y. 258.)  It applies, however, to attempts to modify such a contract by parol.  It does not

affect a parol collateral contract distinct from and independent of the written agreement. It is, at times, troublesome to draw the line. Williston, in his work on Contracts (sec. 637) points out the difficulty. " Two entirely distinct contracts," he says, " each for a separate consideration may be made at the same time and will be distinct legally. Where, however, one agreement is entered into wholly or partly in consideration of the simultaneous agreement to enter into another, the transactions are necessarily bound together. * * * Then if one of the agreements is oral and the other is written, the problem arises whether the bond is sufficiently close to prevent proof of the oral agreement." That is the situation here. It is claimed that the defendants are called upon to do more than is required by their written contract in connection with the sale as to which it deals.

The principle may be clear, but it can be given effect by no mechanical rule. As so often happens, it is a matter of degree, for as Professor Williston also says where a contract contains several promises on each side it is not difficult to put any one of them in the form of a collateral agreement. If this were enough written contracts might always be modified by parol. Not form, but substance is the test.

In applying this test the policy of our courts is to be considered. We have believed that the purpose behind the rule was a wise one not easily to be abandoned. Notwithstanding injustice here and there, on the whole it works for good. Old precedents and principles are not to be lightly cast aside unless it is certain that they are an obstruction under present conditions. New York has been less open to arguments that would modify this particular rule, than some jurisdictions elsewhere. Thus in *Eighmie* v. *Taylor* (98 N. Y. 288) it was held that a parol warranty might not be shown although no warranties were contained in the writing.

Under our decisions before such an oral agreement

as the present is received to vary the written contract at least three conditions must exist, (1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing; or put in another way, an inspection of the written contract, read in the light of surrounding circumstances must not indicate that the writing appears " to contain the engagements of the parties, and to define the object and measure the extent of such engagement." Or again, it must not be so clearly connected with the principal transaction as to be part and parcel of it.

The respondent does not satisfy the third of these requirements. It may be, not the second. We have a written contract for the purchase and sale of land. The buyer is to pay $8,400 in the way described. She is also to pay her portion of any rents, interest on mortgages, insurance premiums and water meter charges. She may have a survey made of the premises. On their part the sellers are to give a full covenant deed of the premises as described, or as they may be described by the surveyor if the survey is had, executed and acknowledged at their own expense; they sell the personal property on the farm and represent they own it; they agree that all amounts paid them on the contract and the expense of examining the title shall be a lien on the property; they assume the risk of loss or damage by fire until the deed is delivered; and they agree to pay the broker his commissions. Are they to do more? Or is such a claim inconsistent with these precise provisions? It could not be shown that the plaintiff was to pay $500 additional. Is it also implied that the defendants are not to do anything unexpressed in the writing?

That we need not decide. At least, however, an inspection of this contract shows a full and complete agreement, setting forth in detail the obligations of each

party. On reading it one would conclude that the reciprocal obligations of the parties were fully detailed. Nor would his opinion alter if he knew the surrounding circumstances. The presence of the ice house, even the knowledge that Mrs. Mitchill thought it objectionable would not lead to the belief that a separate agreement existed with regard to it. Were such an agreement made it would seem most natural that the inquirer should find it in the contract. Collateral in form it is found to be, but it is closely related to the subject dealt with in the written agreement — so closely that we hold it may not be proved.

Where the line between the competent and the incompetent is narrow the citation of authorities is of slight use. Each represents the judgment of the court on the precise facts before it. How closely bound to the contract is the supposed collateral agreement is the decisive factor in each case. But reference may be made to *Johnson* v. *Oppenheim* (55 N. Y. 280, 292); *Thomas* v. *Scutt* (127 N. Y. 133); *Eighmie* v. *Taylor* (98 N. Y. 288); *Stowell* v. *Greenwich Ins. Co.* (163 N. Y. 298); *Newburger* v. *American Surety Co.* (242 N. Y. 134); *Love* v. *Hamel* (59 App. Div. 360); *Daly* v. *Piza* (105 App. Div. 496); *Seitz* v. *Brewers Refrigerating Co.* (141 U. S. 510); *American Locomotive Co.* v. *Nat. Grocery Co.* (226 Mass. 314); *Doyle* v. *Dixon* (12 Allen, 576). Of these citations, *Johnson* v. *Oppenheim* and the two in the Appellate Division relate to collateral contracts said to have been the inducing cause of the main contract. They refer to leases. A similar case is *Wilson* v. *Deen* (74 N. Y. 531). All hold that an oral stipulation, said to have been the inducing cause for the subsequent execution of the lease itself, concerning some act to be done by the landlord, or some condition as to the leased premises, might not be shown. In principle they are not unlike the case before us. Attention should be called also to *Taylor* v. *Hopper* (62 N. Y. 649), where it is assumed that evidence

of a parol agreement to remove a barn, which was an inducement to the sale of lots, was improper.

We do not ignore the fact that authorities may be found that would seem to support the contention of the appellant. Such are *Erskine* v. *Adeane* (L. R. 8 Ch. App. 756) and *Morgan* v. *Griffith* (L. R. 6 Exch. 70), where although there was a written lease a collateral agreement of the landlord to reduce the game was admitted. In this State *Wilson* v. *Deen* might lead to the contrary result. Neither are they approved in New Jersey (*Naumberg* v. *Young*, 15 Vroom, 331). Nor in view of later cases in this court can *Batterman* v. *Pierce* (3 Hill, 171) be considered an authority. A line of cases in Massachusetts, of which *Durkin* v. *Cobleigh* (156 Mass. 108) is an example, have to do with collateral contracts made before a deed is given. But the fixed form of a deed makes it inappropriate to insert collateral agreements, however closely connected with the sale. This may be cause for an exception. Here we deal with the contract on the basis of which the deed to Mrs. Mitchill was given subsequently, and we confine ourselves to the question whether its terms may be modified.

Finally there is the case of *Chapin* v. *Dobson* (78 N. Y. 74, 76). This is acknowledged to be on the border line and is rarely cited except to be distinguished. Assuming the premises, however, the court was clearly right. There was nothing on the face of the written contract, it said, to show that it intended to express the entire agreement. And there was a finding, sustained by evidence, that there was an entire contract, only part of which was reduced to writing. This being so, the contract as made might be proved.

It is argued that what we have said is not applicable to the case as presented. The collateral agreement was made with the plaintiff. The contract of sale was with her husband and no assignment of it from him appears. Yet the deed was given to her. It is evident that here

was a transaction in which she was the principal from beginning to end. We must treat the contract as if in form, as it was in fact, made by her.

Our conclusion is that the judgment of the Appellate Division and that of the Special Term should be reversed and the complaint dismissed, with costs in all courts.

LEHMAN, J. (dissenting). I accept the general rule as formulated by Judge ANDREWS. I differ with him only as to its application to the facts shown in the record. The plaintiff contracted to purchase land from the defendants for an agreed price. A formal written agreement was made between the sellers and the plaintiff's husband. It is on its face a complete contract for the conveyance of the land. It describes the property to be conveyed. It sets forth the purchase price to be paid. All the conditions and terms of the conveyance to be made are clearly stated. I concede at the outset that parol evidence to show additional conditions and terms of the conveyance would be inadmissible. There is a conclusive presumption that the parties intended to integrate in that written contract every agreement relating to the nature or extent of the property to be conveyed, the contents of the deed to be delivered, the consideration to be paid as a condition precedent to the delivery of the deeds, and indeed all the rights of the parties in connection with the land. The conveyance of that land was the subject-matter of the written contract and the contract completely covers that subject.

The parol agreement which the court below found the parties had made was collateral to, yet connected with, the agreement of purchase and sale. It has been found that the defendants induced the plaintiff to agree to purchase the land by a promise to remove an ice house from land not covered by the agreement of purchase and sale. No independent consideration passed to the defendants for the parol promise. To that extent the written

contract and the alleged oral contract are bound together. The same bond usually exists wherever attempt is made to prove a parol agreement which is collateral to a written agreement. Hence " the problem arises whether the bond is sufficiently close to prevent proof of the oral agreement." See Judge ANDREWS' citation from Williston on Contracts, section 637.

Judge ANDREWS has formulated a standard to measure the closeness of the bond. Three conditions, at least, must exist before an oral agreement may be proven to increase the obligation imposed by the written agreement. I think we agree that the first condition that the agreement " must in form be a collateral one " is met by the evidence. I concede that this condition is met in most cases where the courts have nevertheless excluded evidence of the collateral oral agreement. The difficulty here, as in most cases, arises in connection with the two other conditions.

The second condition is that the " parol agreement must not contradict express or implied provisions of the written contract." Judge ANDREWS voices doubt whether this condition is satisfied. The written contract has been carried out. The purchase price has been paid; conveyance has been made, title has passed in accordance with the terms of the written contract. The mutual obligations expressed in the written contract are left unchanged by the alleged oral contract. When performance was required of the written contract, the obligations of the parties were measured solely by its terms. By the oral agreement the plaintiff seeks to hold the defendants to other obligations to be performed by them thereafter upon land which was not conveyed to the plaintiff. The assertion of such further obligation is not inconsistent with the written contract unless the written contract contains a provision, express or implied, that the defendants are not to do anything not expressed in the writing. Concededly there is no such express provision in the

contract, and such a provision may be implied, if at all, only if the asserted additional obligation is " so clearly connected with the principal transaction as to be part and parcel of it," and is not " one that the parties would not ordinarily be expected to embody in the writing." The hypothesis so formulated for a conclusion that the asserted additional obligation is inconsistent with an implied term of the contract is that the alleged oral agreement does not comply with the third condition as formulated by Judge ANDREWS. In this case, therefore, the problem reduces itself to the one question whether or not the oral agreement meets the third condition.

I have conceded that upon inspection the contract is complete. " It appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement; " it constitutes the contract between them and is presumed to contain the whole of that contract. (*Eighmie* v. *Taylor*, 98 N. Y. 288.) That engagement was on the one side to convey land; on the other to pay the price. The plaintiff asserts further agreement based on the same consideration to be performed by the defendants after the conveyance was complete, and directly affecting only other land. It is true, as Judge ANDREWS points out, that " the presence of the ice house, even the knowledge that Mrs. Mitchill thought it objectionable, would not lead to the belief that a separate agreement existed with regard to it; " but the question we must decide is whether or not, *assuming* an agreement was made for the removal of an unsightly ice house from one parcel of land as an inducement for the purchase of another parcel, the parties would ordinarily or naturally be expected to embody the agreement for the removal of the ice house from one parcel in the written agreement to convey the other parcel. Exclusion of proof of the oral agreement on the ground that it varies the contract embodied in the

writing may be based only upon a finding or presumption that the written contract was intended to cover the oral negotiations for the removal of the ice house which lead up to the contract of purchase and sale. To determine what the writing was intended to cover " the document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered." (Wigmore on Evidence [2d ed.], section 2430.)

The subject-matter of the written contract was the conveyance of land. The contract was so complete on its face that the conclusion is inevitable that the parties intended to embody in the writing all the negotiations covering at least the conveyance. The promise by the defendants to remove the ice house from other land was not connected with their obligation to convey, except that one agreement would not have been made unless the other was also made. The plaintiff's assertion of a parol agreement by the defendants to remove the ice house was completely established by the great weight of evidence. It must prevail unless that agreement was part of the agreement to convey and the entire agreement was embodied in the writing.

The fact that in this case the parol agreement is established by the overwhelming weight of evidence is, of course, not a factor which may be considered in determining the competency or legal effect of the evidence. Hardship in the particular case would not justify the court in disregarding or emasculating the general rule. It merely accentuates the outlines of our problem. The assumption that the parol agreement was made is no longer obscured by any doubts. The problem then is clearly whether the parties are presumed to have intended to render that parol agreement legally ineffective

and non-existent by failure to embody it in the writing. Though we are driven to say that nothing in the written contract which fixed the terms and conditions of the stipulated conveyance suggests the existence of any further parol agreement, an inspection of the contract, though it is complete on its face in regard to the subject of the conveyance, does not, I think, show that it was intended to embody negotiations or agreements, if any, in regard to a matter so loosely bound to the conveyance as the removal of an ice house from land not conveyed.

The rule of integration undoubtedly frequently prevents the assertion of fraudulent claims. Parties who take the precaution of embodying their oral agreements in a writing should be protected against the assertion that other terms of the same agreement were not integrated in the writing. The limits of the integration are determined by the writing, read in the light of the surrounding circumstances. A written contract, however complete, yet covers only a limited field. I do not think that in the written contract for the conveyance of land here under consideration we can find an intention to cover a field so broad as to include prior agreements, if any such were made, to do other acts on other property after the stipulated conveyance was made.

In each case where such a problem is presented, varying factors enter into its solution. Citation of authority in this or other jurisdictions is useless, at least without minute analysis of the facts. The analysis I have made of the decisions in this State leads me to the view that the decision of the courts below is in accordance with our own authorities and should be affirmed.

CARDOZO, Ch. J., POUND, KELLOGG and O'BRIEN, JJ., concur with ANDREWS, J.; LEHMAN, J., dissents in opinion in which CRANE, J., concurs.

Judgment accordingly.