139 So.2d 126

UTICA MUTUAL INSURANCE COMPANY

v.

Amzi G. BARBER.

6 Div. 832.

Court of Appeals of Alabama.

March 13, 1962.

London Yancey, Clark & Allen and Max Hudson, Birmingham, for appellant.

Barber & Barber, Birmingham, for appellee.

**554**

CATES, Judge.

Utica Mutual appeals from a judgment in favor of Col. Barber for $1,000.00 in a suit for indemnity for loss of household goods stolen from his residence at Santa Rosa, Florida.

The main question here is whether this personal property was covered by Utica Mutual's Broad Form Personal Theft Policy No. 27379 RT [1] at the time of theft

The case was tried without a jury with the following facts stipulated:

"(1) That there was a theft or taking of property which belonged to or was under the control of the plaintiff within the terms of the policy.

"(2) That the value of the said property was an amount in excess of the policy limit of $1,000.00.

"(3) That this plaintiff is a proper party plaintiff.

"(4) That the only question, so far as the parties are concerned, to be resolved by the Court, is the question as to whether or not coverage is afforded by the language of the policy * * * which was in effect at the time of the loss.

"(5) That proper notice was given of the loss within the terms of the policy by the assured to the insurance company, the defendant in this case, and that liability was denied and payment refused after proper notice was

given, prior to the bringing of this suit."

In addition, the plaintiff introduced in evidence the policy which provides, under Coverage A, by reason of loss from the "premises or a depository," indemnity [with respect to (a) jewels and furs, and (b) all other property] up to a combined limit of $1500.00. Coverage B, "Loss Away From the Premises," gives a combined indemnity limit to $1,000.00.

In Item 1 of the declaration, the policy reads that the premises are located at 2919 Surry Road, Birmingham, Alabama, "unless otherwise stated herein: ———" [2]

Recovery, if at all due, comes under Coverage B, "Loss Away From the Premises," which, in the insuring agreement, is stated as follows:

"To pay for loss by theft or attempt thereat, mysterious disappearance, vandalism or malicious mischief away from the premises of personal property which is owned or used by an insured or is owned by a residence employee thereof.

"This coverage does not apply:

"(a) * * *

"(b) to property while at any dwelling, including grounds, garages, stables and other outbuildings incidental thereto, owned or occupied by or rented to an insured except while an insured is temporarily residing therein;

"(c) * * *

"(d) * * *

"(e) * * *

"(f) * * *.

■ Accordingly, we consider that the quoted clause would operate as an exclusion of Coverage B unless an "insured"

---

1. The complaint describes the policy as No. "37379 RT, * * * 'Residence and Outside Theft Policy', * * * "

2. In the policy, this last blank is not filled in.

was temporarily residing at the Florida dwelling when the property was stolen.

The policy defines "insured" as follows:

" * * * The term 'insured' means the named insured and any person while a permanent member of the named insured's household, other than (1) a residence employee or (2) a person not related to the named insured or his spouse and who pays board or rent to either."

The appellant's brief gives a summary of Col. Barber's testimony; and, with respect to the Florida property, it extracts the cross-examination as follows:

" * * * He stated that there would be times when it would be vacant, especially in the winter months, however, that he had a nephew, D. M. Davis, who, at the time of this loss, resided in Monroeville, Alabama, and he and his family would stay in the Florida home some during the winter months as his nephew traveled in that area. He further testified that the loss, the subject of this suit, occurred sometime in December 1958, which was discovered by his nephew, D. M. Davis. Mr. Davis, according to the plaintiff, advised him that the house had been burglarized sometime in March of 1959. He further testified that it was his understanding that his nephew discovered the loss approximately ten (10) days before it was reported to him, the plaintiff."

There was no proof that any other member of the household was staying at or near the Florida house at the time of the theft.

■ We conclude that Col. Barber's nephew was not a permanent member of Col. Barber's household. McGrady v. Liberty National Life Ins. Co., 40 Ala. App. 390, 114 So.2d 324. Mr. Davis's presence at the Florida dwelling could not, therefore, assimilate Coverage B of this policy to the property therein.

■ Over objection the trial judge admitted testimony as to the negotiations which Col. Barber had with the issuing agent for Utica Mutual to show that for a number of years he had requested express coverage as to an alternate set of premises in the policies issued to him in various companies.

This testimony should not have been received by the trial court because this action was upon an express written policy, not for the breach of an oral insurance or agreement to insure. See Globe & Rutgers Fire Ins. Co. v. Eureka Sawmill Co., 227 Ala. 667, 151 So. 827, as to pleading and proving verbal contracts of insurance or to insure.[3] The effect of such testimony was to imply an agreement to write a different policy from the one on which the plaintiff declared. Also, it was not confined to negotiations for Utica Mutual. Western Assur. Co. v. Stoddard, 88 Ala. 606, 7 So. 379 (evidence of former policy with different company irrelevant and injurious).

In Hartford Fire Ins. Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348, Livingston, C. J., excerpted from Judge Andrews in Mitchill v. Lath, 247 N.Y. 377, 160 N.E. 646, 68 A.L.R. 239, as to three conditions required of an oral agreement admissible to vary a written one. The third requisition reads: " * * * it must be one that parties would not ordinarily be expected to embody in the writing, * * *." Adapting this to a policy which had certain schedule spaces left blank, our court concluded (1) the blanks implied that the parties did not intend to contract thereabout; (2) "insurance contracts are notoriously complete"; and (3) the facts supported completeness.

After discussing counts in Shapiro's complaint charging breach of an oral agreement (with a reference to the doctrine of merger by acceptance of a written policy), the opinion went on to say "an insured is presumed to be familiar with the provisions of his policy."

---

3. Plaintiff made no allegation of consideration paid or to be paid.

Accordingly, under the Shapiro case, supra, the judgment of the circuit court is due to be reversed and the cause there remanded.

Reversed and remanded.