GEM CORRUGATED BOX CORPORATION, Plaintiff-Appellee,

v.

NATIONAL KRAFT CONTAINER CORPORATION and St. Regis Paper Company, Defendants-Appellants.

Nos. 676, 677, Dockets 33573, 33616.

United States Court of Appeals, Second Circuit.

Argued April 3, 1970.

Decided June 1, 1970.

Samuel Rubin, New York City (Conrad & Smith, New York City, on the brief), for plaintiff-appellee.

Richard G. McGahren, New York City (LeBoeuf, Lamb, Leiby & MacRae, New York City, on the brief), for defendants-appellants.

Before KAUFMAN and FEINBERG, Circuit Judges, and TIMBERS, District Judge.*

TIMBERS, District Judge:

Defendants National Kraft Container Corporation and St. Regis Paper Company appeal from a judgment of the United States District Court for the Southern District of New York, Edward J. Dimock, District Judge, entered after

---

* Chief Judge of the District of Connecticut, sitting by designation.

a jury trial, awarding plaintiff Gem Corrugated Box Corporation $19,278 in an action for breach of contract for the sale of National Kraft stock to plaintiff.[1] The chief issue on appeal is whether the trial court was correct in its application of controlling New York law as to parol evidence in admitting evidence of an oral agreement for the sale of stock when a written contract between the parties for the sale of corrugated paper products to plaintiff included an express provision that it contained the entire agreement of the parties. We hold that the trial court was correct in admitting the parol evidence, as well as in its other rulings raised on this appeal. We affirm.

## I.

Upon the issues raised by the only cause of action submitted to the jury—one for breach of contract for the sale of stock—the jury could have found the following pertinent facts, *inter alia*, in support of its special verdict:

Plaintiff was engaged in the New York metropolitan area as a jobber in the business of manufacturing, processing and selling corrugated paper products, principally boxes and other containers. In the fall of 1958, plaintiff and a number of other jobbers of corrugated boxes found themselves at a low economic ebb. They consulted one Samuel Kipnis, a person with many years of experience in the field, to explore possible ways of improving the group's financial condition.

Kipnis first proposed to the group the formation of a new corporation, in effect by merger or consolidation of the individual jobbing concerns, with each jobber contributing its business and receiving in turn a proportionate percentage of the new corporation's stock. The principal advantage of participating in the larger collective entity would be increased leverage in bargaining over purchase prices of unfinished paper materials. Kipnis engaged accountants to analyze the status of each interested individual jobber. Plaintiff cooperated in furnishing requested information, gave access to its books, and contributed to payment for the accountants' services.

On January 7, 1959, at a meeting with the jobbers, Kipnis represented that he had a commitment from St. Regis for supply of corrugated box materials at favorable prices. In the ensuing weeks, discussion continued as to the details of participation by the jobbers in the proposed new corporation.

1. Although the parties in this Court have not addressed themselves to the jurisdiction of the District Court to enter the judgment appealed from, we have examined the record ourselves and are satisfied that the District Court did have jurisdiction over the parties and the subject matter.

A jurisdictional issue is flagged because a $19,278 judgment was entered upon the second cause of action (the only one submitted to the jury) which invoked the diversity jurisdiction of the District Court. Judgment was in favor of plaintiff Gem Corrugated Box Corporation, a New York corporation with its principal place of business in New York City, and against defendant St. Regis Paper Company, also a New York corporation with its principal place of business in New York City. Judgment was entered against St. Regis because it had assumed the liabilities of National Kraft Containing Corporation, a Delaware corporation with its principal place of business in New Jersey, and the only defendant named in the second cause of action other than Samuel Kipnis who was not served and did not appear in the action.

The original complaint, however, contained two causes of action which alleged violations of the federal antitrust laws. Although these two federal question causes of action were dismissed pursuant to stipulation of the parties prior to trial, the District Court properly exercised pendent jurisdiction over the remaining causes of action, including the only one submitted to the jury and upon which the judgment appealed from was entered. See Rosado v. Wyman, 397 U.S. 397 (1970); United Mine Workers v. Gibbs, 383 U.S. 715, 721–29 (1966); cf. Rogers v. Valentine, 426 F.2d 1361 (2 Cir. 1970).

On February 20, 1959, Kipnis organized National Kraft as a Delaware corporation.

On July 10, 1959, Kipnis met with the jobbers to announce a revised plan under which National Kraft and the jobbers would retain their individual identities; National Kraft would obtain the advantage of a long-term materials purchase contract with St. Regis; and each jobber would become a stockholder of National Kraft, able to purchase as many shares as it wished upon entering into a contract to purchase its corrugated paper products requirements from National Kraft. The continuing benefits to the jobber would be primarily its status as a stockholder in a corporation with a favorable long-term raw materials purchase contract and an established market for sale of finished products.

Plaintiff maintained its interest in the new plan. During the following months discussions of particulars continued. National Kraft during this period was equipping a plant in New Jersey which was to become its principal place of business.

On November 25, 1959, plaintiff entered into a written contract with National Kraft to purchase its box materials requirements from National Kraft for a period of five years. The contract price was not attractive; consummation of the stock purchase agreement was the real inducement to enter into the requirements contract. At the urging of Kipnis, however, consummation of the stock purchase transaction was postponed. The written requirements contract included a provision that it contained the entire agreement of the parties and was subject to amendment only in writing.

Further meetings took place in connection with the stock purchase phase of the overall plan. Plaintiff was discomfited to learn that the bargain price of

"cost" to Kipnis at which it was to purchase National Kraft shares reflected valuations placed by National Kraft upon Kipnis' transfers to the corporation of real estate and the St. Regis contract, as well as actual cash investment by Kipnis; but eventually, in March of 1960, plaintiff communicated its intention of purchasing 7,000 shares. The requested stock was never delivered to plaintiff.

On August 16, 1960, St. Regis acquired all of the stock of National Kraft in exchange for shares of St. Regis stock.

## II.

█ The essential issue presented on the instant appeal is whether the New York common law parol evidence rule [2] precluded admission of evidence of the oral agreement for sale of National Kraft stock to plaintiff.

The controlling authority relied upon by defendants is Mitchill v. Lath, 247 N.Y. 377, 380–81, 160 N.E. 646, 647 (1928), in which the Court of Appeals stated:

"Under our decision before such an oral agreement as the present is received to vary the written contract, at least three conditions must exist: (1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing, or, put in another way, an inspection of the written contract, read in the light of surrounding circumstances, must not indicate that the writing appears 'to contain the engagements of the parties, and to define the object and measure the extent of such engagement.' Or, again, it must not be so clearly connected with the

2. Although Uniform Commercial Code § 2–202 would appear to control a similar contemporary dispute over the sale of securities, cf. Agar v. Orda, 264 N.Y. 248. 250–53, 190 N.E. 479. 480–81 (1934), it has not been applied retroactively to purported contracts entered into prior to the effective date of the UCC in New York (September 27, 1964). See, e. g., Eskimo Pie Corporation v. Whitelawn Dairies, Inc., 284 F.Supp. 987, 991–93 (S.D.N.Y.1968).

principal transaction as to be part and parcel of it."

■ It is defendants' contention that the parol evidence bar must apply because reception of evidence of the oral agreement necessarily contradicts the express provision of the written contract that it contains the entire agreement of the parties; and also because the ordinary expectation would be that the written contract would contain some reference to the stock agreement, since both were part of the same transaction.

We agree with the trial court, however, that the conceptual framework of the parties' contractual relationships as revealed by the record is very different from that claimed by defendants. Plaintiff's ultimate request for 7,000 National Kraft shares operated as an acceptance of the offer to sell plaintiff as many shares as it wished in consideration for plaintiff's entering into the requirements purchase contract. The proposed sale of stock was not merely an ancillary, contemporaneous agreement; it was the vital element of the overall transaction. Viewed in this proper perspective, it is plain that the provision in the requirements contract that it contains the entire agreement of the parties means that the writing contains the entire agreement as to its limited subject matter alone; and it is equally plain that the parties ordinarily would not embody the stock purchase agreement in a writing concerned only with box materials purchase terms.

In short, defendants' reliance upon the parol evidence rule is misplaced, for the stock agreement and not the requirements contract was the "principal transaction." Mitchill v. Lath, *supra*; see also Fogelson v. Rackfay Construction Company, 300 N.Y. 334, 338, 90 N.E.2d 881, 882–83 (1950). Indeed, it would appear that the parol evidence rule simply has no application in these circumstances; the oral agreement does not serve to vary or modify the engagement of the parties with respect to the terms of purchase of box materials.

## III.

The other issues raised by the parties require only brief mention.

■■ Defendants rely upon the statute of frauds, but it is clear from the foregoing that the defense is insufficient. The trial court was correct in concluding that, if the jury found a contract to have been made, the contract would arise from an offer to sell plaintiff as many shares as plaintiff wished to purchase in consideration for plaintiff's agreeing to enter into the paper products purchase contract. Subsequent execution of the written contract on this record was sufficient part performance. In any event, defendants may not interpose the defense of the statute of frauds where, as here, it is manifest that plaintiff was induced to alter its position to its damage and refusal to carry out the stock sale agreement would work obvious injustice to plaintiff. See Walter v. Hoffman, 267 N.Y. 365, 196 N.E. 291 (1935); M. H. Metal Product Corporation v. April, 251 N.Y. 146, 167 N.E. 201 (1929).

■ Defendants have raised a number of issues with respect to the determination of damages. While the record is not as complete as plaintiff may have wished, and the mathematics underlying the trial judge's charge to the jury are rather intricate, our careful review of the entire record satisfies us that the formulation and award of damages are adequately supported. Cf. Achilles v. New England Tree Expert Co., 369 F.2d 72, 73–4 (2 Cir. 1966).

Plaintiff also has appealed from the judgment, claiming that it was error for the trial judge to instruct the jury that it could find an agreement for the sale of only 7,000 shares, and no more. We hold that plaintiff's cross-appeal is without merit.

Affirmed.