[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 282 
Alabama Electric Cooperative, Inc. ("AEC"), and its insurers — Wausau Insurance Company and Aegis Insurance Services, Inc. — appeal from a summary judgment in favor of Bailey's Construction Company, Inc. ("Bailey"). We affirm.
 I. Facts and Procedural History
On March 2, 2000, AEC and Bailey entered into a written contract whereby Bailey agreed to remove ash and sludge from one of AEC's holding ponds. The terms of the contract specifically required Bailey to provide evidence to AEC that Bailey had procured liability insurance to cover the removal procedure. According to AEC, Bailey agreed to have AEC named as an additional insured on the liability insurance policy Bailey secured, but the contract itself does not contain that requirement. AEC points out that, on two occasions during the approximately two years before AEC and Bailey entered into the holding-pond contract, AEC had requested through letters to Bailey that, because Bailey was performing work for AEC, Bailey provide AEC evidence showing that AEC had been named as an additional insured on Bailey's then existing insurance policies. According to AEC, Bailey forwarded those requests to Bailey's insurance agent, International Assurance, Inc., who, according to AEC, sent certificates of insurance to AEC that listed AEC as an additional insured on the policies represented by those certificates.[1] The parties refer to International Assurance as an independent broker. According to AEC, the representations on the certificates that AEC was an additional insured were false, because AEC had never actually been added as an additional insured on the policies by an endorsement to that effect.
On October 30, 2000, Willene McLoed, an independent contractor working for Bailey, was killed on AEC's premises while working on the holding-pond project. The executor of McLoed's estate filed a wrongful-death action against AEC. AEC contacted International Assurance and requested that it provide AEC with a certificate of insurance showing AEC as an additional insured on Bailey's then existing liability policy; QBE Insurance Company was the underwriter of the policy in effect at the time. It was subsequently determined that AEC was not an additional insured on Bailey's insurance policy with QBE. Nevertheless, according to Bailey, in response to AEC's request, International Assurance added AEC as an additional insured on a certificate of insurance without authorization from Bailey or QBE. International Assurance sent that certificate to AEC.
AEC demanded that Bailey and QBE defend and indemnify AEC in the wrongful-death action resulting from McLoed's death. Initially, QBE represented to AEC that it would defend and indemnify AEC, because AEC was listed as an additional *Page 283 
insured on the certificate of insurance. Later, however, QBE refused to defend and indemnify AEC on the ground that AEC was never actually added to the policy as an additional insured by an endorsement to that effect.
AEC and its own insurers settled the wrongful-death action without contribution from Bailey or QBE. Subsequently, AEC and its insurers sued Bailey, QBE, and International Assurance. Bailey moved for a summary judgment on all claims against it, which the trial court granted; it certified the summary judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. AEC and its insurers appealed. The only claims at issue in this appeal are AEC and its insurers' claims against Bailey.
 II. Standard of Review
"The standard of review applicable to a summary judgment is the same as the standard for granting the motion. . . ."McClendon v. Mountain Top Indoor Flea Market, Inc.,601 So.2d 957, 958 (Ala. 1992).
 "A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present `substantial evidence' creating a genuine issue of material fact — `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Capital Alliance Ins. Co. v. Thorough-Clean, Inc.,639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley,893 So.2d 337, 342 (Ala. 2004).
 III. Analysis
Against Bailey, AEC and its insurers alleged misrepresentation, breach of contract, negligence, and wantonness.
 A. Misrepresentation
AEC and its insurers contend that they presented substantial evidence indicating that Bailey falsely represented to AEC that AEC was named as an additional insured on Bailey's insurance policies and that those misrepresentations induced AEC to enter into the holding-pond contract. AEC and its insurers contend that the misrepresentations were contained in the certificates of insurance sent to AEC by International Assurance, indicating that AEC was an additional insured on Bailey's then existing insurance policies.
"An insurance broker, like other brokers, is primarily the agent of the person who first employs him, and, in the absence of a statute to the contrary, he is the agent of insured as to all matters within the scope of his employment." 44 C.J.S.Insurance § 181 (1993). Bailey argues that, even assuming that Bailey can be held liable for the misrepresentations of International Assurance, AEC and its insurers have not presented substantial evidence indicating that AEC reasonably relied on those misrepresentations in awarding Bailey the holding-pond contract. Reasonable reliance is an essential element of a misrepresentation claim. See *Page 284 Foremost Ins. Co. v. Parham, 693 So.2d 409, 421
(Ala. 1997).
In support of their misrepresentation claim, AEC and its insurers rely on two specific certificates of insurance sent by International Assurance to AEC, before AEC awarded Bailey the holding-pond contract, indicating that AEC was an additional insured on Bailey's then existing policies. Bailey points out that both certificates carried the following statement:
 "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."
(Capitalization in original.) Further, while the reverse side of the first certificate of insurance relied upon by AEC and its insurers does not appear in the record, the reverse side of the second certificate, dated June 2, 1999, does. It states:
 "IMPORTANT "If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsements).
 "If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).
 "DISCLAIMER "The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insureds), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon."
(Capitalization in original.)
In TIG Insurance Co. v. Sedgwick James ofWashington, 184 F.Supp.2d 591 (S.D.Texas 2001), the client of a vendor and the client's own insurer sued an insurance broker, alleging that the broker had misrepresented on an insurance certificate that the client was an additional insured on the vendor's insurance policy. The United States District Court for the Southern District of Texas held as a matter of law that the client could not have reasonably relied on the insurance certificate:
 "In order to prevail on a claim of negligent or fraudulent misrepresentation, a plaintiff must show that he reasonably relied upon the defendant's false representations. See American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 436 (Tex. 1997) (fraud and negligent misrepresentation claims require reasonable reliance by the plaintiff). Plaintiffs in the instant case have not shown through the probative evidence that they reasonably relied upon the representation of additional insured status on the certificate of insurance.
 "`A claim for misrepresentation can not stand when the party asserting the claim is legally charged with knowledge of the true facts.' Shindler v. Mid-Continent Life Ins. Co., 768 S.W.2d 331, 334
(Tex.App.-Houston [14th Dist.] 1989, n.w.h.) (citing Sutton v. Grogan Supply Co., 477 S.W.2d 930, 935 (Tex.App.-Texarkana 1972, no writ)). An insured has a duty to read the insurance policy and is charged with knowledge of its provisions. Ruiz v. Government Employees Ins. Co., 4 S.W.3d 838, 841
(Tex.App.-El Paso 1999, n.w.h.); Pankow v. Colonial *Page 285 Life Ins., 932 S.W.2d 271, 277
(Tex.App.-Amarillo 1996, writ denied); Amarco Petroleum, Inc. v. Texas Pacific Indemnity Co., 889 S.W.2d 695, 699-700 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Under Texas law, an insurance agent generally has no duty to explain policy terms to an insured. Ruiz, 4 S.W.3d at 841.
 "The Court concludes that [the client], claiming to be an additional `insured' under [the policy], should be held to the same obligation as a named insured to review a policy of insurance on which it seeks to rely, and its reliance solely on the agent's certificate of insurance is not reasonable under the circumstances presented by the admissible evidence. While the cited cases do not involve additional insureds, there is no admissible evidence to suggest that [the client], had it made the request, would have been unable to obtain and read the insurance policy in issue. . . .
 "Moreover, [the client], the holder of a certificate of insurance, was warned it was not entitled to rely on the certificate itself for coverage. The certificate stated to the holder that the certificate did not create coverage. See Granite[ Constr. Co. v. Bituminous Ins. Cos.], 832 S.W.2d [427,] 429 [(Tex.Ct.App. 1992)]. . . . The certificate of insurance issued by [the insurance broker] prominently stated that it was `issued as a matter of information only and did not `amend, extend or alter' coverage provided by the listed policies. Had Plaintiffs taken the reasonable step of obtaining a copy of [the policy] . . . Plaintiffs would have learned there was no additional insured coverage in the policy at all.
 "Thus, the Court finds that Plaintiffs' reliance upon [the insurance broker's] representation of [the client's] additional insured status was not reasonable. Accordingly, as a matter of law, Plaintiffs' claims for negligent and fraudulent misrepresentation fail."
184 F.Supp.2d at 603-04 (footnotes omitted). See also 17 Lee R. Russ Thomas F. Segalla, Couch on Insurance
§ 242:33 (3d ed. 1997) ("Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy. A certificate of insurance is not part of the policy — if it states that there is coverage but the policy does not, the policy controls."); Richard H. Glucksman Glenn T. Barger,Additional Insured Endorsements: Their Vital Importance inConstruction Defect Litigation, 21 Construction Law. 30, 33 (Winter 2001) ("A developer or general contractor generally should demand more proof [than just a certificate of insurance], including a specific additional insured endorsement, to confirm their additional insured status.").
We find the above-cited authority persuasive. AEC and its insurers attempt to distinguish TIG Insurance Co. by arguing that, in TIG Insurance Co., the court noted that there was no evidence indicating that, had the plaintiff in that case attempted to review the actual insurance policy, it could not have done so. Here, according to AEC and its insurers, there is evidence indicating that AEC would have been unable to obtain access to the insurance policies on which it thought it was an additional insured. AEC and its insurers contend that the deposition testimony of Andrea Mills, International Assurance's agent, shows that International Assurance would not have given AEC a copy of Bailey's policy because, according to Mills, "it's none of [AEC's] business." Mills testified as follows: *Page 286 
 "Q: So, in 1998, from the information in International Assurance's file, AEC was sent a Certificate of Insurance; it was not sent a policy so far as you can tell; is that correct?
 "A: That is correct. Yes.
 "Q: Should it have been sent a policy?
 "A: No, sir.
 "Q: Would it be unusual for an additional insured to receive anything other than the certificate?
 "A: Yes, it would be unusual.
 "Q: I take it that would not be done unless they specifically asked for it?
 "A: Yes. And it would happen with a lot of kicking and screaming done on my behalf.
 "Q: And why is that?
 "A: Because it's none of their business.
 "Q: Correct me if I'm wrong. An additional insured, you're giving them — They've asked to be an additional insured. International Assurance is giving them evidence they're an additional insured. But the specifics of the policy and the coverage and the premium —
 "A: Exactly.
 "Q: — that's Bailey's business?
 "A: That is correct.
 "Q: And without Bailey's consenting to it, you would be —
 "A: Never.
 "Q: — you would not give that information out?
 "A: That is correct. Never.
 "Q. Because they may not want AEC to know how much they're paying for insurance?
 "A: Right."
However, AEC and its insurers do not contend that AEC actually attempted to obtain a copy of the policies or the additional-insured endorsements that would have existed had AEC been named as an additional insured on the policies. Further, AEC and its insurers do not point to any testimony of the insurers underwriting the policies indicating that those insurers would have refused AEC access to the policies or to the additional-insured endorsements. Finally, AEC and its insurers do not point to any testimony from Bailey indicating that it would have refused to consent to AEC's reviewing the policy. Based on the facts of this case, we hold that AEC and its insurers have not presented substantial evidence indicating that it was reasonable for AEC to rely on the certificates of insurance indicating that it was an additional insured in awarding Bailey the holding-pond contract.[2] While AEC and its insurers contend that International Assurance was Bailey's agent, AEC and its insurers have not argued before this Court that International Assurance was also the agent of the insurer.[3] The trial court did not err in entering a summary judgment for Bailey on the misrepresentation claim.
 B. Breach of Contract
AEC and its insurers contend that AEC offered to "do business" with Bailey if Bailey would maintain insurance naming AEC as an additional insured while it "did business" with AEC and that Bailey accepted that offer by requesting International Assurance to obtain insurance *Page 287 
naming AEC as an additional insured. The written holding-pond contract between AEC and Bailey contained a provision requiring Bailey to furnish evidence indicating that Bailey itself was insured before commencing work under the contract:
 "12 INSURANCE: If this contract covers the performance of labor for AEC, Contractor [Bailey] will prior to commencement of performance, furnish evidence that Contractor has insurance coverage in at least the following amounts: a) Worker's Compensation Statutory limits for State(s) in which work is to be performed, including Longshoreman's coverage if applicable.
 "b) Comprehensive General Liability, including Contractual Liability, Completed Operational/Products, Broad Form Property Damage, and Contractor's Protective Liability, if subcontractors are used. Minimum limits Personal Injury, including death and Property Damage, $1,000,000 each occurrence, and $1,000,000 aggregate.
 "c) Automobile Liability including Owned, Non-owned and Hired vehicles. Minimum limits — Bodily injury $1,000,000 each person, $1,000,000 each occurrence, and Property Damage $1,000,000 each occurrence.
 "Said Certificate must set forth the name of insurer, policy number, expiration date, limits of liability and at least (10) days written notice to AEC of cancellation.
 "Contractor shall perform the work as an independent contractor with exclusive control of the manner and means of performing the work, subject only to Owner's right to inspect and oversee the work to assure that it is performed in accordance with the specifications and other requirements of the Contract."
AEC and its insurers do not dispute that the holding-pond contract does not require Bailey to have AEC named as an additional insured on its insurance policies.
 "The parol evidence rule provides that, absent some evidence of fraud, mistake, or illegality, a party to an unambiguous written contract cannot offer parol, or extrinsic, evidence of prior or contemporaneous oral agreements to change, alter, or contradict the terms of the contract. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988); Colafrancesco v. Crown Pontiac-GMC, Inc., 485 So.2d 1131, 1132-33
(Ala. 1986)."
Environmental Sys., Inc. v. Rexham Corp.,624 So.2d 1379, 1381 (Ala. 1993). "The [parol evidence] rule provides, generally, that when the parties reduce a contract to writing, intended to be a complete contract regarding the subject covered by that contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter or contradict such writing." Colafrancesco v. CrownPontiac-GMC, Inc., 485 So.2d 1131, 1133 (Ala. 1986). The holding-pond contract contains a merger clause stating: "NO CONTRACT SHALL EXIST EXCEPT AS HEREIN PROVIDED." (Capitalization in original.) Clearly, the parties intended that the writing be the complete contract on the subject matter it covered.
AEC and its insurers argue that they are not attempting to alter the terms of the written holding-pond contract with evidence of a prior or contemporaneous oral agreement, and they do not argue that the parties did not intend the written contract to be fully integrated. Rather, according to AEC and its insurers, Bailey's oral agreement to maintain insurance naming AEC as an additional insured while "doing business" with AEC was part of a contract separate from the written holding-pond contract. Specifically, AEC and its insurers' *Page 288 
argument with respect to the merger clause in the written holding-pond contract is that "[a]n integration/merger clause does not bar or invalidate a previous or contemporaneous contract if the agreement is not inconsistent with the integrated contract and is made for separate consideration." (Brief of AEC and its insurers at 42 (citing Restatementof Contracts § 240 (1932)).
In Hartford Fire Insurance Co. v. Shapiro,270 Ala. 149, 117 So.2d 348 (1960), this Court said:
 "`When a written instrument shows that it contains the obligation of both parties to it, that alone is evidence of the terms of the contract. It is only when the instrument shows that it does not contain all the terms of the contract as to both parties to it that evidence may be offered to show further stipulation than those expressed, unless it is proposed to prove an engagement independent of and collateral to the matters embraced in such written instrument. . . .' (Emphasis supplied [in Hartford].)
"The question presented here is whether or not the oral contract is sufficiently separate and distinct from the written one as to bring it within the exception stated.
"Various courts have evolved tests to determine this separateness. Alabama has not been presented with the precise question, but has stated that the oral agreement may be considered collateral, even though the subject matter of the two contracts is the same. Alabama Power Company v.Pierre, 236 Ala. 521, 183 So. 665 [(1938)].
"The majority of American courts presented with this problem agree that:
 "`. . . (5) the test as to whether the alleged parol agreement is sufficiently distinct and separate so that the parol-evidence rule does not preclude its proof is primarily whether the parties intended the written contract to cover all of the matters embraced in their prior or contemporaneous negotiations, including that part omitted from the writing; (6) in determining this intent, the court should consider the "closeness" of the alleged parol agreement to the writing, the surrounding circumstances as well as the written contract itself, and what parties ordinarily might be expected to do under those circumstances as to inclusion of particular matters in the writing. . . .' 70 A.L.R. 770.
"In a leading case, Mitch[i]ll v. Lath,247 N.Y. 377, 160 N.E. 646, 647, 68 A.L.R. 239, reargument denied248 N.Y. 526, 162 N.E. 511 [(1928)], Justice Andrews said:
 "`. . . Under our decisions before such an oral agreement as the present is received to vary the written contract, at least three conditions must exist: (1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing,. . . .'
"Gianni v. R. Russel Co., Inc., 281 Pa. 320,126 A. 791, 792 [(1924)], reaches the following solution:
 "`. . . This can be answered by comparing the two, and determining whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject-matter, and are so interrelated that both would be executed at the same time and in the same contract, the scope of the subsidiary agreement must be taken to be *Page 289 
covered by the writing. This question must be determined by the court.'
"Professor Wigmore, in IX Wigmore on Evidence, 3rd Ed. 98, § 2430, analyzes the problem as follows:
 "`(2) This intent must be sought where always intent must be sought . . ., namely, in the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered.'"
270 Ala. at 153-54, 117 So.2d at 362-53. According to E. Allan Farnsworth, Contracts § 7.3 (3d ed.1999):
 "In Mitchill v. Lath, [160 N.E. 646, 647, 247 N.Y. 377, 381-82 (1928),] the leading collateral agreement case, a purchaser of land under a written contract attempted to show a prior agreement by the vendor to remove an unsightly ice house from a nearby tract. The New York Court of Appeals held that the parol evidence rule precluded such a showing because
 "`an inspection of this contract shows a full and complete agreement, setting forth in detail the obligations of each party. On reading it, one would conclude that the reciprocal obligations of the parties were fully detailed. . . . Were such an agreement [as to the ice house] made it would seem most natural that the inquirer should find it in the contract.'"
(Footnote omitted.) See also Environmental Sys., Inc.,624 So.2d at 1381 ("[O]ne who seeks, in a breach of contract action, to enforce an oral representation or promise relating to the subject matter of the contract cannot succeed, because of the parol evidence rule.").
As noted, the written contract between AEC and Bailey contained a provision dealing with Bailey's obligation to obtain insurance, but did not require Bailey to name AEC as an additional insured on that insurance. In light of the fact that the written contract dealt expressly with the subject matter of the alleged collateral oral agreement, i.e., Bailey's alleged promise to maintain a certain type of insurance while it "did business" with AEC, we hold that the alleged collateral oral agreement was one the parties would naturally have included in the written agreement. Because the written agreement stated that it was the only agreement between the parties, we hold as a matter of law that no agreement existed requiring Bailey to maintain insurance on which AEC was named as an additional insured during work on the holding-pond contract. See, Farnsworth, § 7.2 ("The most satisfactory basis of the [parol evidence] rule is that suggested by Corbin: `Any contract . . . can be discharged or modified by subsequent agreement of the parties. . . . If the foregoing is true of antecedent contracts that were once legally operative and enforceable, it is equally true of preliminary negotiations that were not themselves mutually agreed upon or enforceable at law. The new agreement is not a discharging contract, since there were no legal relations to be discharged; but the legal relations of the parties are now governed by the terms of the new agreement' Viewed in this way, the [parol evidence] rule simply affirms the primacy of a subsequent agreement over prior negotiations and even over prior agreements." (Footnote omitted.)). Thus the trial court did not err in entering a summary judgment for Bailey on the breach-of-contract claim. *Page 290 
 C. Negligence and Wantonness
AEC and its insurers allege that Bailey had a duty to have AEC named as an additional insured on the policy in effect at the time of the accident, that Bailey negligently and wantonly breached that duty, and that AEC and its insurers were damaged by Bailey's breach. Bailey, on the other hand, argues that it had no duty to have AEC named as an additional insured.
AEC and its insurers contend that Bailey voluntarily assumed a duty to maintain insurance naming AEC as an additional insured. We have already determined that the final expression of the parties' intent with respect to Bailey's insurance responsibilities for the holding-pond project was represented in the written contract, which did not require Bailey to have AEC named as an additional insured on the insurance policies relating to that project. Therefore, once Bailey entered into the written contract, it had abandoned any duty it might have voluntarily assumed up to that point.
AEC and its insurers do not specifically allege that, after the parties entered into the written holding-pond contract, Bailey again assumed a duty to have AEC named as an additional insured on the insurance policies relating to the project. AEC and its insurers contend that "[Bailey's] actions in instructing International Assurance to name AEC as an additional insured are sufficient evidence to demonstrate that [Bailey] assumed . . . a duty" to have AEC named as an additional insured whenever Bailey did business with AEC. (Brief of AEC and its insurers at 26.) AEC and its insurers do not, however, explain in their brief exactly what "actions in instructing International Assurance" they are referring to. Looking to the remainder of their brief, we can discern from the statement of facts and from their misrepresentation argument that AEC and its insurers contend that Rick Kyle, an agent of AEC, on two occasions before the written holding-pond contract was executed, sent Bailey letters requesting that Bailey provide AEC with certificates of insurance showing AEC as an additional insured on Bailey's then existing insurance policies. The record supports that contention and also supports AEC and its insurers' contention that Bailey responded to AEC's requests by forwarding AEC's letters to International Assurance. Of course, because those actions occurred before the parties entered into the written holding-pond contract, they cannot show that Bailey recognized its alleged duty to keep AEC as an additional insured during the performance of the subsequent holding-pond contract.
Also in the misrepresentation-argument section of their brief, AEC and its insurers contend that they
 "presented deposition testimony from Andrea Mills of International Assurance ([Bailey's] insurance agent), who testified that [Bailey] sent her Rick Kyle's letters, that she generated certificates of insurance showing AEC as an additional insured, that these certificates of insurance were evidence that AEC was an additional insured, and that she sent AEC these certificates of insurance with [Bailey's] knowledge and consent."
(Brief of AEC and its insurers at 18; references to record deleted.) The cited portion of Mills's deposition testimony does not support a contention that, after execution of the written holding-pond contract but before the accident occurred, Bailey forwarded to International Assurance a letter from Rick Kyle requesting that AEC be named as an additional insured on Bailey's insurance policy. Based on the arguments of AEC and its insurers and the portions of the record cited in their brief, we conclude that AEC and its insurers *Page 291 
have not presented substantial evidence indicating that, after execution of the written holding-pond contract, Bailey assumed a duty to have AEC named as an additional insured on Bailey's insurance policy relating to the holding-pond project.
As an alternative to its argument that Bailey assumed the duty to keep AEC as an additional insured on its insurance policies, AEC and its insurers also argue that, under Alabama caselaw, in determining whether a particular duty exists in the construction context, courts should look to
 "1) the extent to which the transaction was intended to affect the other person, 2) the forseeability of harm to him, 3) the degree of certainty that he suffered injury, 4) the closeness of connection between the defendant's conduct and the injury, 5) the moral blame attached to such conduct, and 6) the policy of preventing future harm."
(Brief of AEC and its insurers at 26-27.) In support of this argument, AEC and its insurers cite Berkel Co.Contractors, Inc. v. Providence Hospital, 454 So.2d 496,503 (Ala. 1984). In Berkel, this Court held that a property owner and its architect had a duty to act reasonablyin performing their duties under a contract with a general contractor. The property owner and architect's breach of that duty gave rise to a cause of action for negligence on the part of a subcontractor that was not in privity of contract with the property owner or the architect. The Court relied on five of the six above-listed factors in so holding (moral blame was irrelevant in that case). The Court's holding was also buttressed by the fact that the property owner and its architect had substantial control over the subcontractor's performance of its duties.
In the instant case, we have already determined that Bailey had no contractual duty to have AEC named as an additional insured on Bailey's insurance policy in effect during the holding-pond project. That this case does not involve the negligent performance of an existing contractual duty is enough to distinguish it from Berkel. Further, AEC and its insurers have not cited any authority directly supporting the proposition that contractors generally owe their clients a duty, apart from any contractual duty, to maintain insurance naming those clients as additional insureds, a violation of which will give rise to actionable negligence, and we decline to so hold.[4] Thus the trial court did not err in entering a summary judgment for Bailey on the negligence and wantonness claims.
 IV. Conclusion
We hold as a matter of law that AEC and its insurers have not presented substantial evidence indicating that AEC reasonably relied on the certificates of insurance sent to it by International Assurance before AEC and Bailey entered into the written holding-pond contract as evidence that AEC was named as an additional insured on the policies represented by the certificates. We also hold that the parol-evidence rule bars any finding of a contractual oral agreement between AEC and Bailey, independent of the written holding-pond contract, whereby Bailey agreed to *Page 292 
maintain insurance naming AEC as an additional insured during the holding-pond project. Finally, we hold that AEC and its insurers have not presented substantial evidence indicating that Bailey had a duty to maintain such insurance, the violation of which would give rise to a cause of action for negligence or wantonness. Accordingly, the trial court correctly entered a summary judgment for Bailey.
AFFIRMED.
NABERS, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] Black's Law Dictionary 240 (8th ed.2004) defines a certificate of insurance as: "A document acknowledging that an insurance policy has been written, and setting forth in general terms what the policy covers."
[2] We do not reach the question of the effect of a request for access to an insurance policy and a subsequent refusal of access.
[3] See Marlin v. Wetzel County Bd. of Educ., 212 W.Va. 215, 569 S.E.2d 462 (2002) (the court did not enforce the disclaimer in a certificate of insurance in an action against the insurer, relying on West Virginia law dealing with exceptions to the general rule against expanding coverage of an insurance agreement through the doctrine of estoppel).
[4] AEC and its insurers also contend that "the existence of a duty to procure insurance has been recognized by this Court on several occasions." (Brief of AEC and its insurers at 27.) However, the cases AEC and its insurers cite involve the liability of insurance agents who, with a view toward compensation, undertake to procure insurance coverage for the agents' potential clients, but who negligently fail to procure such coverage. Obviously, Bailey is not an insurance agent that undertook with a view to compensation to provide AEC with insurance coverage, and we decline to extend the cases AEC and its insurers cite to the instant situation.