[910 NYS2d 1]

RAMON A. TORRES, Respondent-Appellant, v PETER D'ALESSO, Appellant-Respondent and Third-Party Plaintiff-Appellant-Respondent. GREENBLATT & AGULNICK, P.C., et al., Third-Party Defendants-Respondents-Appellants.

First Department, October 7, 2010

### APPEARANCES OF COUNSEL

*Gallet Dreyer & Berkey, LLP*, New York City (*Morrell I. Berkowitz* and *Peter A. Massa* of counsel), for appellant-respondent.

*Greenblatt & Agulnick, P.C.*, Great Neck (*Scott E. Agulnick* of counsel), for respondents-appellants.

### OPINION OF THE COURT

Saxe, J.P.

When both parties to a real estate sales contract have executed and delivered to the other party a completely integrated written contract containing the specific language that any prior oral agreements or representations are merged into the writing, and that "neither party rel[ies] upon any statement made by anyone else that is not set forth in this contract," such a contract may not be avoided by a claim of a prior orally-agreed-upon condition precedent to the effectiveness of the contract. The rule that the parties to a written contract may orally agree to a condition precedent to the effectiveness of the contract, so that a party must be permitted to prove by parol evidence a claim that the contract never became effective because the condition precedent never occurred (*see Hicks v Bush*, 10 NY2d 488, 491 [1962]), is not applicable under circumstances such as

those presented here. Even if the rule were applicable here, the purported condition would be unenforceable because it contradicts terms of the writing. And, the words used to create the condition lack the "clear language showing that the parties intended to make it a condition" (*Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d 576, 581 [1992]) that is necessary to validly create a condition precedent to the effectiveness of the contract.

Defendant buyer executed a written contract to purchase real property on Fire Island from plaintiff seller. With the signed contract, the buyer turned over to the individual third-party defendant, the seller's attorney, a contract down payment check for $120,000. However, the buyer alleges that the terms of the parties' contract were modified by an oral agreement he made with the seller's attorney at the time he turned over the signed contract and down payment check, under which the attorney allegedly agreed not to deposit the buyer's down payment check "until further notice" while the buyer awaited word on whether his application for a home equity line of credit was granted.

The written contract as negotiated by the parties consisted of a modified standard form contract for the sale of residential real estate, with a rider. In the contract's final form, the parties deleted from the standard form its entire mortgage financing contingency provision, so that the final agreement contained nothing that conditioned the buyer's obligations on his ability to obtain financing. Indeed, rider paragraph 45 contained a specific representation that the buyer had sufficient assets to complete the purchase. Additionally, rider paragraph 39 dealt with the possibility of a check being returned, giving *the seller* the option of deeming the contract void ab initio "in the event any check being delivered herewith fails of collection," and *if* the seller so notified the buyer, giving the buyer 48 hours to replace the bounced check with certified funds.

Also important here is the language of the written contract's merger clause, in paragraph 28. It provides that

> "[a]ll prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract."

It goes on to provide that "[n]either this contract nor any provi-

sion thereof may be waived, changed or cancelled except in writing."

On October 31, 2007, with the consent of the buyer's attorney, who declined to be present, the seller's attorney met with the buyer to receive the contract executed by the buyer and his down payment check. The seller's attorney disputes the buyer's claim as to exactly what was said at that meeting. According to the attorney, when the buyer gave him the executed contract and check, the buyer asked him not to deposit the check until Monday November 5, 2007, on which date he could deposit it unless he heard otherwise. In response, the attorney says, he told the buyer that it was his practice not to deposit a down payment check until he received the fully countersigned contract from the seller, and that he would not be receiving the fully executed contract before November 5th, so the down payment would not be deposited before then; as to any other problems or questions, he advised the buyer to speak to his own attorney.

According to the buyer, he informed the seller's attorney that he was waiting to hear within the next week on his application for a home equity line of credit, and that he " 'did not have money in [his] account' to make good the deposit check, and asked if he [the seller's attorney] could hold the check without depositing same until he heard further from me," and "[the seller's attorney] responded that he 'will not submit the check until I hear from you.' " The buyer then signed the contract and gave the seller's attorney the check based on this assurance. A friend of the buyer's who accompanied him to the attorney's office concurs with the buyer's version of the events.

The seller's attorney sent the contract to his client for signature. While awaiting the return of the contract from his client, the seller's attorney received three calls from the buyer's attorney, who inquired about when the fully executed contract would be received and requested immediate delivery of it upon receipt. He also ordered a title report. On November 12, 2007, the seller's attorney received the executed contract from the seller, deposited the down payment check in the escrow account, and delivered a copy of the fully executed contract to the buyer by fax and by mail, with a letter indicating that the check had been deposited in the escrow account.

On November 19, 2007, the buyer's attorney faxed a letter to the seller's attorney stating, "Our client has advised us that he will not be proceeding with the above transaction." On the same day, the seller's attorney was also informed by the bank

that the down payment check had been returned for insufficient funds. The seller's attorney sent a letter to the buyer's attorney requesting a certified replacement check for $120,000 plus a certified check for $15 to cover the bounced check fee charged by the bank. The buyer sent the seller a check for $15, but never sent a replacement check for the down payment. This action followed, in which the seller, as plaintiff, sought a money judgment in the amount of $120,000 representing liquidated damages for the buyer's breach of contract. The court granted the seller's motion for summary judgment.

The buyer contends that the court should have denied the seller's motion for summary judgment because a dispute exists as to whether the allegedly agreed-upon oral condition was part of the contract, which, if resolved in the buyer's favor, would render the parties' written agreement unenforceable because the condition never occurred. We reject this contention and affirm the grant of summary judgment in the seller's favor.

In taking the position that the signed written contract was not enforceable in view of the new condition that the seller's attorney allegedly agreed to upon accepting the contract executed by the buyer and the down payment check, the buyer relies on *Gutowski v Louie* (193 Misc 2d 465 [2002]). *Gutowski* is a New York County Supreme Court decision involving a signed contract and deposit check sent to a seller's attorney along with a letter requesting that the check be held in escrow and not deposited until the buyer was in possession of fully executed contracts; the court held that a question of fact was presented as to whether an enforceable contract was created before the buyer's receipt of the fully executed contracts (*see id.* at 467).

*Gutowski* does not fully support the buyer's position here, since the court's analysis in that case did not address whether the act requested in that buyer's letter—waiting to deposit the buyer's check until the contracts were fully executed—materially altered the terms of the written contract, so as to require the court to consider whether such a modification was permissible.

However, rejection of the cases cited by the buyer does not dispose of the appeal, because the dissent expands on the buyer's argument. Relying on the rule that parties to a written contract may, by oral agreement, create a condition precedent to the effectiveness of the written contract, the dissent asserts that the buyer's claim is sufficient to preclude summary judgment because he is entitled to demonstrate, by parol evidence, that an

orally-agreed-upon condition precedent never occurred and that the contract therefore never became effective.

The rule relied on by the dissent, that "[p]arol testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement, if the condition does not contradict the express terms of such written agreement" (*Hicks v Bush*, 10 NY2d 488, 491 [1962], *supra* [citations omitted]), is one of long standing; in *Ware v Allen* (128 US 590, 596 [1888]), the United States Supreme Court discussed "that class of cases, well recognized in the law, by which an instrument . . . is made to depend, as to its going into operation, upon events to occur or to be ascertained thereafter."

In our view, however, that rule may not properly be applied to a real estate sales contract like that under consideration here, that is, a fully executed real estate sales contract containing a broad merger clause, especially when the merger clause specifies that "[n]either party rel[ies] upon any statement made by anyone else that is not set forth in this contract."

Initially, we observe that treating real estate contracts differently from other kinds of contracts is supported by ancient common law of this State; indeed, the Court of Appeals clearly stated in 1894 that a party who delivers a signed written contract to the other party may not claim that an oral condition was added at the time of delivery, precluding its effectiveness or enforcement (*Blewitt v Boorum*, 142 NY 357 [1894]). As articulated by the Court of Appeals in *Blewitt*, the delivery of the signed contract to the other party itself renders the claimed condition unavailable:

> "The rule in this state regarding deeds conveying real estate, or an interest therein, or agreements for the sale thereof, is that a delivery cannot be made to the grantee or other party thereto conditionally or as is said in escrow, and when delivered to a party the delivery operates at once and the condition is unavailable" (*id.* at 363, citing *Gilbert v North Am. Fire Ins. Co.*, 23 Wend 43 [1840], *Worrall v Munn*, 5 NY 229 [1851], *Braman v Bingham*, 26 NY 483 [1863] and *Wallace v Berdell*, 97 NY 13, 25 [1884]).

This rule also precludes adding oral conditions to a signed writ-

ten real estate sales contract when its delivery was to the other party's agent (see *Worrall v Munn*, 5 NY at 238).[1]

Precluding a buyer such as defendant from undermining a signed and delivered contract by the means attempted here, the alleged imposition of an oral condition, also comports with fundamental principles of law. First, the statute of frauds' requirement that real estate sales contracts be in writing (General Obligations Law § 5-703) reflects important policy concerns. Real estate transactions are required to be in writing to ensure clarity and certainty, and to avoid fraud (see *Villano v G & C Homes*, 46 AD2d 907, 907 [1974]). Unlike other types of business transactions, real estate sales contracts are drawn up and executed only after all terms have been negotiated and finalized and the writing is complete. Any conditions precedent are normally included in those written terms, such as mortgage contingency clauses found in standard form real estate contracts making the deal contingent on the buyer's obtaining the contemplated mortgage loan. The writing is expected to represent the final version of the parties' agreement. While exceptions to the requirement of a writing exist, they are limited and inapplicable here. If we permit interference with enforcement of a written and fully executed real estate sales contract based on a claimed oral condition precedent to its effectiveness, the need for certainty and finality at the heart of the statute of frauds is undermined.

Cases in the tradition of *Hicks v Bush* (10 NY2d 488 [1962], *supra*), in which parties have been allowed to prove claimed oral conditions precedent to the effectiveness of a contract, have most frequently involved an underlying contract that was not required to be in writing, or circumstances in which there was no particular reason to object to part of the agreement being oral while the rest was written. *Hicks v Bush* itself, for example, involved a claimed breach of a written contract providing for a merger of the various parties' corporate interests into one holding company. The cases cited in *Hicks v Bush* similarly involved agreements that need not be in writing (see *Saltzman v Barson*, 239 NY 332 [1925]; *Grannis v Stevens*, 216 NY 583 [1916]; *Rey-*

---

**1.** *Frantz v Gatto* (274 App Div 1003 [1948]), in which the Second Department allowed a claim that a condition was imposed upon the delivery of a signed real estate contract, is inapposite, since the claimed conditional delivery was not made either to the other party or to the other party's agent; rather, it was to someone who "was acting for both respondent and appellant," whom the court characterized as "a person who is not a party to the agreement."

*nolds v Robinson*, 110 NY 654 [1888]; *Fadex Foreign Trading Corp. v Crown Steel Corp.*, 297 NY 903 [1948]). In such matters, it is perfectly appropriate to enforce an oral condition precedent to a written contract. Real estate sales contracts, which are required and expected to be completely set out in a writing, are another matter.[2]

But, it is not merely because the contract here is for the sale of real estate that we decline to permit the buyer to avoid enforcement of a complete and final contract, signed and delivered, by the assertion of an oral condition to the effectiveness of the contract. It is also important that, like real estate sales contracts generally, the parties' written contract contains a broad merger clause, providing that the writing constitutes the parties' entire agreement and specifying that no prior agreements or representations survive the execution of the writing. *Merger clauses are not mere boilerplate*. They provide further protection for the interests of certainty and finality. The merger clause in the present case specifies that "[a]ll prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract," and that the document "completely expresses their full agreement . . . , neither party relying upon any statement made by anyone else that is not set forth in this contract." Consequently, any claimed prior oral condition or agreement was necessarily extinguished at the moment the written contract became fully executed by both parties. At that point, the buyer could not expect to rely on any previous understanding or oral representation that was not included in the mutually executed written document.

We are aware that while the written contract considered in *Hicks v Bush* did not contain any merger clause by which the parties agreed that the writing represented the entirety of their agreement, there are cases applying the *Hicks v Bush* rule despite the presence in the writing of a merger clause that would seem to preclude an oral condition. However, we decline to adopt their reasoning, at least in the context of real estate sales contracts.

---

**2.** The case of *Mitchill v Lath* (247 NY 377 [1928]), which the dissent discusses at length, concerned an uncontested enforceable written real estate sales contract and a claimed *separate*, oral agreement by the sellers to remove an ice house from the property opposite that which they sold. The sellers' failure to perform the claimed oral agreement was not said to render the written contract ineffective.

For instance, in *Tropical Leasing v Fiermonte Chevrolet* (80 AD2d 467 [4th Dept 1981]), the defendant car dealership claimed that a standard printed purchase order for a particular car was orally conditioned on the nonacceptance of the car by the customer for whom the car had originally been intended. Like in *Hicks v Bush*, it was held in *Tropical Leasing* that the dealership was entitled to establish the existence of the oral condition precedent since the alleged condition did not contradict or negate any term of the purchase order and did not involve the type of condition that would have normally been included in the form purchase order (*id.* at 469). While the printed purchase order contained a general merger clause, the court ruled that the merger clause had no significance because the writing containing it never came into effect (*id.*).

We also recognize that the same reasoning, rendering merger clauses ineffective on the ground that the writing never became effective, has been employed, albeit rarely, in the context of real estate contracts. For instance, the Second Department, in *Procopis v G. P. P. Rests.* (43 AD2d 974, 975 [1974]), allowed proof of an oral condition precedent to the effectiveness of a written real estate sales contract to be admitted to challenge that contract, despite the inclusion in the writing of a merger clause that provided that "all prior agreements and understandings are 'merged in this contract.' " We find this decision unpersuasive and decline to adopt its reasoning. While this Court's decision in *Mack-Lowe v Picault-Cadet* (33 AD3d 504 [2006]) assumed the applicability of the *Hicks v Bush* rule to real estate sales contracts, notably, the rule's applicability to the situation was not challenged on appeal. Rather, the focus was on whether the alleged oral condition contradicted the written contract, and whether the alleged condition was one that the parties would be expected to include in the written contract; consequently, our decision was limited to addressing the raised issues.

The dissent appropriately relies on such rulings as *Procopis* and *Tropical Leasing* (*supra*) to support the contention that a merger clause cannot be relied on to eliminate an oral condition precedent to the effectiveness of the contract. Nevertheless, notwithstanding these cases, we are unwilling to adopt a rule allowing a party to a fully executed and delivered real estate sales contract lacking any financing contingencies or conditions to evade the effect of a broad merger clause clearly intended to extinguish exactly such a claimed oral condition.

Rather, we rely on the same type of reasoning as that articulated in *Blewitt v Boorum* (142 NY 357 [1894], *supra*).

The deal, as documented by the writing, was binding and absolute upon execution of the contract by both parties and delivery to their contractual counterparties, and the buyer could not nullify it with a purported orally created condition precedent to the existence of a binding contract. Ultimately, the claimed oral agreement must be treated as irrelevant here, because its very existence was, in effect, extinguished when the parties delivered the fully executed writing. This is not a situation like that presented in *Gutowski* (193 Misc 2d 465 [2002], *supra*), where it was argued that the contract was not created because the signed contract and letter, characterized by the court as the buyer's offer, was rescinded *before the contract became binding* upon being countersigned by the seller.

We disagree with the dissent's implication that the lack of any prior case law dealing with the troubling nature of applying the *Hicks v Bush* rule in the context of real estate sales contracts tends to establish that its application here is not problematic. As to the dissent's suggestion that any difficulty the rule creates could be avoided by including in such contracts a provision specifying that no conditions precedent exist other than those stated in the agreement, while such language would be easy to include (in fact, meticulous drafters of real estate contracts may hereafter decide to add such language, in an abundance of caution), it should not be necessary. Indeed, it seems safe to assume that form contracts have up to now not included such language because the specialists who drafted them have universally, and properly, believed that claims such as that made here are already covered by merger clause provisions extinguishing "[a]ll prior understandings, agreements, representations and warranties, oral and written, between Seller and Purchaser." To require inclusion of the words "oral conditions precedent" in the foregoing provision as the way to prevent such a claim is unnecessarily exacting. Any reasonable person reading the language of the written merger clause as it exists would properly infer that any prior oral conditions were extinguished along with all other oral or written "understandings, agreements, representations and warranties."

As to the absence of any problems with the enforceability of written real estate sales contracts up to now, it can be explained by the careful manner with which such transactions are generally handled by attorneys. It is unusual, not to say sloppy, for one party to meet alone with the attorney for the other party, ostensibly purely to sign the contract and tender the down pay-

ment, only to then propose a new condition to the deal. Standard practice would prevent any such situations, since two attorneys who negotiated a contract would treat such a request as an attempt to orally modify the terms of the negotiated writing, contrary to the writing's merger clause, and would put a stop to the process of finalizing the deal until they were sure that the writing correctly reflected the exact terms of the parties' full agreement.

It is worth recalling General Obligations Law § 15-301 (1), which provides that "[a] written agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." Thus, in the face of the written contract's provision that "[n]either this contract nor any provision thereof may be waived, changed or cancelled except in writing," the buyer may not be allowed to claim an oral *modification* to the writing adding a contingency. Where the substance of the claimed orally-agreed-upon condition precedent is of a nature equally suitable to be negotiated and included in the terms of the contract itself, it would amount to nothing less than a manipulation of the court and the law to allow the buyer to avoid that statute and that result by framing the claim not as an oral modification but as a separate oral agreement rendering ineffective the merger clause and the contract containing it.

We reject the dissent's contention that section 15-301 (1) is inapplicable because at the time the alleged oral modification was agreed upon, the contract was not signed by both parties, and therefore an enforceable contract did not yet exist. As soon as the writing was executed by both sides and delivered to the other, section 15-301 (1) took effect, and as of that moment, an executory oral agreement altering the terms of the writing could be of no effect, even if agreed upon earlier.

In sum, the contract for the sale of real property that we consider here, which extinguishes all prior understandings, provides that it constitutes the parties' complete agreement, and specifies that it cannot be modified except in a further writing, precludes the parties from introducing extrinsic evidence to vary the terms of the written contract, or conditioning its effectiveness on some future event. By creating a written contract containing all the terms agreed upon during negotiations, and including a broad merger clause specifically proscribing any

orally agreed-upon terms, the parties expressed their clear expectation that everything and anything related to their deal for the sale of the real property in question would be encompassed in a writing; that expectation must necessarily include any new agreements limiting the "effectiveness" of the contract.

Even if we believed that the parties' real estate sales contract could be rendered ineffective by an oral condition precedent as long as that condition did not contradict the terms of the writing, we disagree with the dissent that the differences between the written contract and the alleged oral condition are merely "disparities." The alleged condition does not merely "deal[ ] with a matter on which the written agreement . . . is silent" (*Hicks v Bush*, 10 NY2d at 492). Rather, we conclude that the alleged oral condition precedent contradicts terms of the written contract, precluding application of the rule of *Hicks v Bush* in any event. The effect of the alleged oral condition is that the seller's attorney would, for an undefined period, hold the down payment check without depositing it until the buyer notified him that a home equity line of credit had been obtained and the check would clear. This purported agreement is contrary to the written contract's provisions directing the seller's attorney to place the down payment in a specified escrow account, describing the down payment as made by "good check," giving only the seller the option to choose to void the contract in the event a check fails of collection, and representing that the buyer had sufficient assets to complete the purchase. It is also arguable that leaving open the question of whether the contract will be effective contradicts the provision in paragraph 15 definitively scheduling the closing for November 30, 2007 and making time of the essence. Additionally, the alleged condition creates a financing contingency in a contract in which the need for such a provision was rejected.

Finally, the language the buyer says he used to elicit the agreement of the seller's lawyer was too precatory to successfully create a condition precedent. "To make a provision in a contract a condition precedent, it must appear from the contract itself that the parties intended the provision so to operate" (22 NY Jur 2d, Contracts § 262). "[A] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition" (*Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d 576, 581 [1992]). "[F]or such a condition to exist it must be apparent from the contract itself that this was the intention of the par-

ties" (*Manning v Michaels*, 149 AD2d 897, 898 [1989]). Here, the buyer stated that after he informed the seller's attorney that he was waiting to hear within the next week on his application for a home equity line of credit, he told the seller's attorney that he " 'did not have money in [his] account' to make good the deposit check, and asked if he [the seller's attorney] could hold the check without depositing same until he heard further from me," and that "[the seller's attorney] responded that he 'will not submit the check until I hear from you.' " The buyer mentioned nothing about conditioning the enforcement or effectiveness of the contract. Even a writing containing the same language would at best be ambiguous, and "the law does not favor a construction which creates a condition precedent (*Lui v Park Ridge at Terryville Assn.*, 196 AD2d 579, 582 [1993]). Contrary to the dissent's assertion, a request to hold a check, rather than depositing it, until further notice does not by itself "[p]lainly" demonstrate the parties' intent to have the fully signed and delivered written contract not become effective unless further steps are taken. If we are to allow a buyer to an otherwise enforceable, all-cash real estate contract to undermine the enforceability of that contract with an oral condition precedent, we should at least require that oral statement to unambiguously establish that it created a condition to the contract.

The buyer here was not without options. Rather than insisting on personally visiting the office of the seller's attorney to immediately sign the contract and deliver the down payment check, if he did not yet have the funds for the down payment, he could have—and should have—postponed signing and handing over the contract and down payment until his contractual representations that he had the funds and could provide the required "good check" were true. Of course, if he had done that, neither party would have been bound, and the seller could have attempted to find another buyer; instead, the buyer took steps calculated to bind the seller to the negotiated contract terms while seeking to leave himself a right to avoid the contract entirely.

The dissent's suggestion that the buyer may have been the victim of dishonesty at the hands of the seller's attorney, and that it is just such dishonesty that the *Hicks v Bush* rule was created to combat, turns this situation on its head. Avoiding dishonesty is exactly why we insist that such contracts be entirely in writing. Indeed, it is the buyer's effort to see the seller's attorney without his own attorney that is suspect here. It was he

who attempted to bind the seller while leaving himself unbound by the contract.

In conclusion, the buyer's attempt to avoid the fully executed and delivered contract by operation of a claimed condition precedent must fail for several reasons. The rule permitting claims of oral conditions precedent to the effectiveness of a written contract is not applicable to real estate sales contracts such as this; even if the rule were applicable, the purported condition would be unenforceable because it contradicts terms of the writing; and even if there were no contradictions, the words purportedly used by the buyer lack the type of "clear language" necessary to show the parties' intent to create a condition precedent.

Once the viability of the claimed oral condition precedent is rejected, the buyer has no viable defense to the seller's prima facie case of entitlement to judgment in the amount of the down payment represented by the bounced check (see Texter v Trotta, 48 AD3d 455 [2008]). This disposition of the seller's motion for summary judgment obviates the need for the seller's attorney to be called as a witness and renders moot the issue of a potential conflict of interest. In any event, since the attorney's testimony would not be prejudicial to his client, there is no conflict of interest warranting disqualification (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 3.7 [b] [1]).

The court properly declined to impose sanctions against the buyer and his attorney.

Accordingly, the order of the Supreme Court, New York County (Edward H. Lehner, J.), entered November 3, 2008, which, inter alia, granted plaintiff's motion for summary judgment, dismissed the counterclaim and third-party complaint, directed entry of judgment against defendant in the principal amount of $120,000, denied defendant's motion to disqualify third-party defendants as attorneys for plaintiff, denied third-party defendants' motion for summary judgment on their counterclaims and for sanctions against defendant and his counsel, and dismissed said counterclaims, should be affirmed, without costs.

McGuire, J. (dissenting). The issue in this case is whether an oral agreement between the parties to a written contract for the sale of real estate is enforceable as an "orally established condition precedent" to the contract (Hicks v Bush, 10 NY2d 488, 491 [1962]). The majority and I agree that an exception to the parol evidence rule permits the validity of such an oral condi-

tion precedent to be recognized under certain circumstances. We disagree, however, in two principal respects: whether integrated contracts for the sale of real estate that contain a merger clause are categorically excluded from that exception as a matter of law; and whether the alleged oral condition precedent at issue is in any event consistent with the exception.

With respect to the first question, I disagree with the majority about both the relevance of Court of Appeals' decisions handed down over a hundred years ago and the import of more recent decisions of the Court of Appeals. Even if the Court of Appeals were to decide that the question is one it has not resolved, decisions of this Court, the Second Department and the Fourth Department make clear that no exception to the oral-condition-precedent exception to the parol evidence rule exists for integrated contracts with merger clauses for the sale of real estate. The majority chooses not to follow these precedents (or other authorities that contradict its position) on the basis of public policy considerations. But absent definitive guidance from the Court of Appeals, I would follow the precedents of this Court and the Second and Fourth Departments. Although the majority asserts that I "impl[y]" that applying those precedents "is not problematic," I imply nothing of the sort. Rather, I am simply arguing that the majority's is not the only position supported by public policy considerations. Indeed, this case presents a variant of an old and significant public policy dispute. As for the second question, the majority's answer is inconsistent with the Court of Appeals' leading decision on the subject and is based on a misreading of both the contract and the condition precedent.

A

The written contract is for the sale of real property on Fire Island. It provides for a purchase price of $1.2 million and a down payment of $120,000, "payable . . . on the signing of this contract, by Purchaser's good check payable to the Escrowee [the seller's attorney] . . . , subject to collection the receipt of which is hereby acknowledged, to be held in escrow pursuant to [another provision] of this contract." The contract includes a rider, the terms of which control over those of the contract in the event of a conflict. Paragraph 38 of the rider states that

> "[u]nder no circumstances shall this Contract have
> a binding effect upon the Purchaser(s) and Seller(s)
> unless and until the Purchaser(s) and Seller(s) have

each executed the same and delivered executed counterparts hereof to each other and the Purchaser(s) shall have paid the Contract Deposit to the Escrowee."

The next paragraph states that

"[p]urchaser(s) understand that, in the event any check being delivered herewith fails of collection, this Contract shall be deemed void *ab initio* at the option of Seller(s), provided however, Purchaser(s) shall have 48 hours from notice by Seller(s) to replace any failed check with a Bank or Certified check."

Although the parties do not alert us to it, paragraph 45 of the rider states that "[p]urchaser(s) represent that they have good credit, sufficient assets to complete the purchase, have not filed for bankruptcy." The contract also provides that "[n]either this contract nor any provision thereof may be waived, changed or cancelled except in writing."

The buyer executed the contract on October 31, 2007. On that date, the buyer met with the seller's attorney (with the apparent consent, communicated to the seller's attorney, of the buyer's attorney) at the latter's office. According to the affidavit submitted by the buyer in opposition to the seller's motion for summary judgment, he met with the seller's attorney in a conference room before signing the contract and told the attorney that he was waiting to hear from Countrywide Bank in California within the next week on his application for a home equity line of credit. According to the buyer, "I specifically told [the seller's attorney] that I 'did not have money in my account' to make good the deposit check and asked if he could hold the check without depositing same until he heard further from me." In response, the seller's attorney stated that he "will not submit the check until I hear from you." The buyer also swore that "[b]ased upon that assurance, I signed the contract and gave him the check." A friend of the buyer's who was with him in the seller's attorney's office also submitted an affidavit in opposition to the seller's summary judgment motion; the friend's sworn account was essentially identical to the buyer's.

Viewing the evidence in the light most favorable to the buyer, as we must on this motion by the seller for summary judgment (*see Udoh v Inwood Gardens, Inc.*, 70 AD3d 563, 565 [2010]), we assume the truth of these factual assertions and deem them sufficient to establish an oral agreement conditioning the

contract's effectiveness on the buyer's telling the seller's attorney that he could deposit the down payment check.[1]

The following subsequent events are undisputed. On November 12, the seller's attorney received the executed contract from the seller and deposited the down payment check into the escrow account that same day. The next day, the seller's attorney faxed and mailed the executed contract to the buyer's attorney, who received the faxed copy that same day and the mailed copy on November 16. On November 19, the buyer's attorney faxed a letter to the seller's attorney stating that "[o]ur client has advised us he will not be proceeding with the . . . transaction." Also that day, the seller's attorney was advised by the bank that the down payment check had been returned for insufficient funds. This action ensued, with the seller suing to recover the contract down payment as liquidated damages, and the buyer both counterclaiming and bringing a third-party complaint against the seller's attorney and his law firm, both of which filed counterclaims.[2]

## B

The leading case in New York is *Hicks v Bush* (10 NY2d 488 [1962], *supra*). A paragraph from the opinion states much of the relevant law and identifies the problem:

---

1. Although the seller's attorney agreed that there was a discussion about holding the down payment check, his account differed from that of the buyer. The seller's attorney affirmed that after he received the executed contract and down payment check from the buyer on October 31, the buyer "asked [him], in sum and substance, not to deposit the check until Monday, November 5, 2007," and told him that he could deposit the check then unless he heard otherwise from the buyer. The seller's attorney responded that he routinely deposits down payment checks only after receipt of the executed contract from the seller, and that he would not be receiving the executed contract from the seller before November 5, 2007. Accordingly, he told the buyer that he would not deposit the check before then and advised the buyer to speak with his attorney if he had any other questions.

2. Given the provision stipulating that the contract was not binding "until the Purchaser(s) and Seller(s) have each executed the same and delivered executed counterparts hereof to each other," the buyer was free to cancel the contract before the date the seller delivered the executed contract to the buyer (*cf. Golkin v S.R.D.N. [USA], Inc.*, 9 AD3d 325, 326 [2004] ["defendant accepted plaintiff's offer to purchase when it mailed a fully executed copy of the contract to plaintiff . . . three days before plaintiff purported to revoke his offer" (citation omitted)]). Thus, until that date, the buyer had complete control over payment of the deposit without regard to the enforceability of the oral agreement. Neither in his answer nor in his affidavit opposing the motion for summary judgment does the buyer assert that he did not exercise that right to cancel in reliance on the oral agreement.

"The applicable law is clear, the relevant principles settled. Parol testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement (see *Saltzman* v. *Barson,* 239 N. Y. 332, 337; *Grannis* v. *Stevens,* 216 N. Y. 583, 587; *Reynolds* v. *Robinson,* 110 N. Y. 654; see, also, 4 Williston, Contracts [3d ed., 1961], § 634, p. 1021; 3 Corbin, Contracts [1960 ed.], § 589, p. 530 *et seq.*), if the condition does not contradict the express terms of such written agreement. (See *Fadex Foreign Trading Corp.* v. *Crown Steel Corp.,* 297 N. Y. 903, affg. 272 App. Div. 273, 274-276; see, also, Restatement, Contracts, § 241.) A certain disparity is inevitable, of course, whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing. Quite obviously, though, the parol evidence rule does not bar proof of every orally established condition precedent, but only of those which in a real sense contradict the terms of the written agreement. (See, e.g., Illustration to Restatement, Contracts, § 241.) Upon the present appeal, our problem is to determine whether there is such a contradiction" (10 NY2d at 491).

*Hicks v Bush* also makes clear that there is "no direct or explicit contradiction between the oral condition and the writing" when "the parol agreement deals with a matter on which the written agreement . . . is silent" (*id.* at 492). The oral condition is enforceable if it "may stand side by side" with the written condition(s) precedent so that it is "simply a further condition . . . and not one which is contradictory" (*id.*). Thus, "evidence of an oral condition is not to be excluded as contradictory or inconsistent merely because the written agreement contains other conditions precedent" (*id.* [internal quotation marks omitted]).

In *Hicks v Bush,* the parties to a written contract agreed to merge various corporate interests that each owned into a holding company. The contract provided that the parties' respective subscriptions for the holding company's stock were to be made within five days of the date of the contract and that the contract would be terminated if, within 25 days of that date, the holding company failed to accept any of the subscriptions. The consideration for the subscriptions was the transfer to the holding company of the stock in the operating companies owned by the

parties. All the subscriptions were made and accepted promptly and the plaintiff transferred to the holding company the stock he owned in one of the operating companies to be merged into the holding company. However, because the defendants did not transfer their stock in their respective operating companies, the merger never occurred. In defending against the plaintiff's breach of contract claim, the defendants asserted that the written contract was subject to a parol condition that it "was not to operate as a contract and . . . was not to become effective until so-called equity expansion funds . . . were first procured" (10 NY2d at 490 [internal quotation marks omitted]).

In an opinion by Judge Fuld, the court upheld the validity of the oral agreement because: the written condition (that the contract would not be binding if, inter alia, any of the subscriptions were not accepted within 25 days) and the oral condition "may stand side by side"; "[t]he oral requirement . . . is simply a further condition . . . and not one which is contradictory"; and finally, "[i]f both provisions had been contained in the written agreement, it is clear that the defendants would not have been under immediate legal duty to transfer the stock in their companies to [the holding company] until both conditions had been fulfilled and satisfied" (id. at 492).

Here, too, even if there is a "certain disparity" between the oral and written agreements, the former "does not contradict the express terms" of the latter (id. at 491). The written agreement specifies necessary conditions for it to become binding (i.e., execution and delivery of executed counterparts and collection of the down payment), but it does not state, let alone expressly state, that these conditions are sufficient conditions. To the contrary, nothing in the written agreement expressly precludes any other conditions to it becoming binding on the parties. Even more to the point, the written agreement does not require, expressly or otherwise, that any check for the down payment be deposited at the time it is delivered to the escrowee. Here, too, the oral condition—that the check not be deposited until the attorney heard further from the buyer—"is simply a further condition" and the oral and written conditions "may stand side by side" (id. at 492).

Thus, if the buyer had informed the seller's attorney the next week that the check could be deposited, the buyer would be bound by the terms of the written agreement if the check nonetheless was returned for insufficient funds (and, of course, if the other written conditions had been satisfied). Similarly, if the

buyer did so inform the seller's attorney, he would be bound if, contrary to paragraph 45 of the rider, he proved not to have "sufficient assets to complete the purchase." Moreover, as in *Hicks v Bush*, if the oral condition had been contained in the written agreement, the seller would not have been under any legal duty to transfer the property to the buyer until that and all the other conditions had been fulfilled and satisfied.

Nor is the oral condition precedent contradicted by the provision of the contract stating that it "shall not be binding or effective until duly executed and delivered by [both parties]." If the buyer had given the go ahead to deposit the check before the seller executed the contract, the contract would have been binding and effective once duly executed and delivered by both parties. Although due execution and delivery are conditions precedent, the buyer giving his go ahead to the depositing of the check "is simply a further condition . . . and not one which is contradictory" (*Hicks v Bush*, 10 NY2d at 492).

### C

The majority, however, holds that

> "[w]hen both parties to a real estate sales contract have executed and delivered to the other party a completely integrated written contract containing the specific language that any prior oral agreements or representations are merged into the writing, . . . such a contract may not be avoided by a claim of a prior orally-agreed-upon condition precedent to the effectiveness of the contract."[3]

The majority's position, then, is that the rule *of Hicks v Bush* does not apply to a written agreement that is integrated,

---

**3.** The ellipsis in this quotation reflects the omission of language from the merger clause quoted by the majority that it apparently regards as significant. In relevant part, the paragraph containing the merger clause reads as follows:

> "All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, *neither party relying upon any statement made by anyone else that is not set forth in this contract*" (emphasis added).

The majority cannot eke any support for its position by singling out the italicized fragment. After all, the fragment does not add anything that is not otherwise stated in the clause. With equal logic, the majority could have singled out the statement that "[a]ll prior understandings . . . are merged in this contract" or the statement that the contract "completely expresses th[e] full agreement" of the parties. As discussed below, the merger clause itself

contains a merger clause and is for the sale of real estate. The majority contends as well that its position with respect to merger clauses is buttressed by General Obligations Law § 15-301 (1) and by public policy considerations.

I turn first to the majority's reliance on the merger clause and General Obligations Law § 15-301 (1). That statute provides as follows: "A written agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent." The majority's reliance on the merger clause and General Obligations Law § 15-301 (1) is pervasive. Thus, it asserts that because of the merger clause, "any claimed prior oral condition or agreement was necessarily extinguished at the moment the written contract became fully executed by both parties." Variants of this assertion appear throughout the majority's writing. For example, it contends that "[u]ltimately, the claimed oral agreement must be treated as irrelevant here, because its very existence was, in effect, extinguished when the parties delivered the fully executed writing." In other words, the majority's position permits one of the parties to have its fingers crossed. The oral agreement of both parties as to the effectiveness of the written agreement is "extinguished" by the unilateral actions of one of the parties.

However, as the Second Department put it in holding that the trial court had erred in excluding evidence of an oral condition precedent to a written contract, "[t]he statement in the contract, in effect, that the written document embodies the agreement of the parties and may not be changed or terminated orally has no significance until there is a contract" (*Procopis v G. P. P. Rests.*, 43 AD2d 974, 975 [1974]). In a case in which the validity of an oral condition precedent was at issue, this Court expressly agreed (*Mack-Lowe v Picault-Cadet*, 33 AD3d 504, 504 [2006] ["the merger clause, which provides that the written document embodies the entire agreement of the parties, is of no consequence until there is a contract in effect"]), as has the Fourth Department in another such case (*Tropical Leasing v Fiermonte Chevrolet*, 80 AD2d 467, 469 [1981] [same]).

---

does not bar recognition of the oral condition precedent. A fortiori, no component of the clause bars its recognition.

Although none of these three decisions discusses General Obligations Law § 15-301 (1),[4] their rationale explains why the majority's reliance on the statute is misplaced: it presupposes that the written agreement containing a provision barring oral modifications went into effect once signed by both parties. General Obligations Law § 15-301 (1) no more applies to the writing signed by these parties than it would to an unsigned writing no matter how complete in form.

Moreover, *Procopis, Mack-Lowe* and *Tropical Leasing* are hardly legal outliers. The majority is free to choose not to follow these three decisions, but it should not suggest that it need deal only with these precedents. To the contrary, the rationale they embrace is the venerable one embraced in several English decisions discussed by the Supreme Court in *Ware v Allen* (128 US 590, 596-597 [1888]). As was stated in one of those cases, " '[t]he distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible' " (*id.* at 596, quoting *Pym v Campbell*, 6 E & B 370, 373 [1856]). This same rationale was embraced by the Court of Appeals not later than 1891 (*see Thomas v Scutt*, 127 NY 133, 137-138 [1891] ["Such (parol) proof does not recognize the contract as ever existing as a valid agreement and is received from the necessity of the case to show that that which appears to be, is not and never was a contract"]; *see also Saltzman v Barson*, 239 NY 332, 337 [1925, Cardozo, J.] [holding that upon retrial, "evidence will be admissible that by force of a condition attached to the delivery the writing was not to come into being as a contract except upon the making of the stipulated loan"]). Not long after *Thomas v Scutt*, the court made clear that the integrated character of a written contract does not bar proof of an oral condition precedent (*Grannis v Stevens*, 216 NY 583, 587 [1916] ["The manual transfer of an instrument, *in form a complete contract*, does not, however, bar parol evidence that it is not to become binding until the happening of some condition precedent resting in parol" (emphasis added)]). And on this score, New York law is fully in accord with the Restatement (Second) of Contracts:

4.   General Obligations Law § 15-301 (1) was enacted in 1963 (L 1963, ch 576, § 1), long before *Procopis* was decided. Indeed, subdivision (1) of the statute was in effect as to contracts for real and personal property since at least 1941, long before *Hicks v Bush* was decided, with the enactment in 1941 of its identically worded (in relevant part) predecessors, Personal Property Law § 33-c (1) (L 1941, ch 329, § 5) and Real Property Law § 282 (1) (L 1941, ch 329, § 4).

"Even a 'merger' clause in the writing, explicitly negating oral terms, does not control the question whether there is an integrated agreement or the scope of the writing" (§ 217, Comment *b*).

A related argument the majority makes is not persuasive. Immediately after invoking General Obligations Law § 15-301 (1), the majority writes as follows:

> "Where the substance of the claimed orally-agreed-upon condition precedent is of a nature equally suitable to be negotiated and included in the terms of the contract itself, it would amount to nothing less than a manipulation of the court and the law to allow the buyer to avoid that statute and that result by framing the claim not as an oral modification but as a separate oral agreement rendering ineffective the merger clause and the contract containing it."

This objection, however, proves too much, as it would invalidate the reasoning in *Procopis, Mack-Lowe* and *Tropical Leasing.* Indeed, except to the extent that the written contract in *Hicks v Bush* did not contain a merger clause, it would compel the conclusion that *Hicks v Bush* was wrongly decided.

The majority writes that "the written contract considered in *Hicks v Bush* did not contain any merger clause by which the parties agreed that the writing represented the entirety of their agreement." Although the most that can be said is that the opinion in *Hicks v Bush* does not say whether the written contract contained such a clause, it seems fair to assume it did not from the absence of any reference to a merger clause in the briefs of the parties. A merger clause, however, simply makes express what is implicit in an integrated written contract, i.e., that the writing constitutes the parties' entire agreement. The plaintiff-appellant in *Hicks v Bush,* claiming a breach of contract, urged both that the written contract stated all its conditions precedent (brief for appellant, at 3) and that it was an integrated contract (*id.* at 17), but the court upheld the validity of the oral condition precedent nevertheless.

Finally, on this score anyway, the majority also is unpersuasive to the extent it means to suggest that the oral agreement is improperly "fram[ed]. . . not as an oral modification" of the written agreement but as an oral condition precedent. An oral agreement surely is a condition precedent when its terms do not vary or even affect the duties of the parties once the written agreement becomes binding but affect only whether the written

agreement becomes binding at all. In sum, the presence of a merger clause in a written agreement does not preclude recognition of an oral condition precedent to the agreement.

Turning to the majority's reliance on the fact that the contract is one for the sale of real estate, I note first that nothing in *Hicks v Bush* suggests that its holding does not apply to real estate contracts. Nor does Restatement of Contracts § 241, cited by the court in *Hicks v Bush* (10 NY2d at 491), suggest that a different rule applies to contracts for the sale of real estate.[5] The same is true with respect to each of the four cases and the two treatises cited in *Hicks v Bush* in support of the rule that an oral condition precedent to the effectiveness of a written agreement may be proven if the condition does not contradict the express terms of the written agreement (*Saltzman v Barson*, 239 NY 332 [1925], *supra*; *Grannis v Stevens*, 216 NY 583 [1916], *supra*; *Reynolds v Robinson*, 110 NY 654 [1888]; *Fadex Foreign Trading Corp. v Crown Steel Corp.*, 297 NY 903 [1948], *affg* 272 App Div 273 [1947]; 4 Williston, Contracts § 634 [3d ed 1961]; 3 Corbin, Contracts § 589 [1960 ed]).[6]

The majority's position also is hard to reconcile with *Mitchill v Lath* (247 NY 377 [1928]). In *Mitchill,* the parties had executed a written agreement for the sale of land, "for cash and a mortgage and containing various provisions usual in such papers" (247 NY at 379). The issue was whether the buyer could enforce an oral agreement by the sellers to remove an ice house from the property (*id.*). The majority discussed at length the conditions under which such an oral agreement can be enforced, and concluded that it was not enforceable (*id.* at 379-

---

5. Section 241 broadly provides as follows:
"Where parties to a writing which purports to be an integration of a contract between them orally agree, before or contemporaneously with the making of the writing, that it shall not become binding until a future day or until the happening of a future event, the oral agreement is operative if there is nothing in the writing inconsistent therewith."

6. In fact, the cases cited by Corbin include ones in which the written agreement was for the sale of real estate (3 Corbin, Contracts § 589, nn 63-78.5, at 530-547 [1960 ed]). Moreover, Chief Judge Breitel made no mention of a real estate exception to the exception in his dissenting opinion in *Long Is. Trust Co. v International Inst. for Packaging Educ.* (38 NY2d 493, 498 [1976]). Rather, Chief Judge Breitel broadly stated that
"[t]he great and hoary exception is that a party is always free to establish by parol evidence that the written undertaking by which he is apparently bound, never came into existence because of an agreed precondition that it not take effect unless and until the extraneous precondition has come to pass" (*id.*).

384). That discussion was pointless if the fact that a written contract is one for the sale of real estate is sufficient to preclude recognition of an oral agreement. After all, that the written agreement was for the sale of real estate played no role in the majority's analysis. Nor did it play any role in the dissenters' analysis. Rather, the dissenters would have recognized the validity of the oral agreement even though they were of the view that the written contract "was so complete on its face that the conclusion is inevitable that the parties intended to embody in the writing all the negotiations covering at least the conveyance" (*id.* at 387 [Lehman, J., dissenting]). The majority counters my "discuss[ion] at length" (i.e., the preceding sentences of this paragraph) of *Mitchill v Lath* with the contention that it "concerned an uncontested enforceable written real estate sales contract and a claimed *separate*, oral agreement." The court refused to enforce the oral agreement, however, precisely because it was *inseparable* from the written real estate sales contract (*id.* at 382 ["Collateral in form (the oral agreement) is found to be, but it is closely related to the subject dealt with in the written agreement—so closely that we hold it may not be proved"]).

The majority's position—at least to the extent it carves contracts for the sale of real estate out of the exception—is contradicted by *Marsh v McNair* (99 NY 174 [1885]). In *Marsh*, the court stated:

> "It is well settled in the law of this State, that an instrument assigning or conveying *real or personal property* in absolute terms may by parol evidence be shown to have been intended as security only. While this rule is an exception to the general rule of evidence, forbidding the contradiction or explanation of written instruments by parol evidence, it has long been established in the law of this State. It grew up in the equity courts from the efforts of equity judges to prevent forfeitures [and] to relieve against frauds . . . ." (*Id.* at 178-179 [emphasis added].)

Six years later, discussing *Marsh v McNair*, the court again unequivocally stated that it was well settled that the exception applies without regard to the type of property assigned or conveyed by the written instrument (*Thomas v Scutt*, 127 NY at 140).

Moreover, the statement in *Marsh v McNair* that this exception to the parol evidence rule applies to instruments assigning

or conveying both real and personal property is consistent with one of the English decisions discussed by the Supreme Court in *Ware v Allen* (128 US 590 [1888], *supra*). As the Supreme Court stated:

> "Later, in 1861, in *Wallis* v. *Littell*, 11 C. B. (N. S.) 369, the same court laid down the same doctrine in regard to an assignment of a lease of a farm which had been made by a tenant to a third party, and the instrument delivered, but with an agreement that it should not take effect until the consent of the landlord was procured. The later [*sic*] refused his consent, and the court held the assignment of the lease, although executed and delivered, had never become operative" (*id.* at 597).

Notably, the majority makes no effort to deal with *Marsh v McNair*. Rather, it focuses on *Blewitt v Boorum* (142 NY 357 [1894]). In that case, the court discussed an earlier decision holding that parol proof of a condition should have been admitted because

> "if a bond be signed and put into the hands of the obligee or a third person on the condition that it shall become obligatory upon the performance of some act of the obligee or any other person, the paper signed does not become the bond of the party signing the same until the condition precedent shall be performed. Until then there is no contract" (*id.* at 363).

Although the contract at issue in *Blewitt v Boorum* was not one for the sale of real property, the court nonetheless proceeded to distinguish cases involving delivery of instruments relating to the conveyance of real property, stating that

> "[t]he rule in this state regarding deeds conveying real estate, or an interest therein, or agreements for the sale thereof, is that a delivery cannot be made to the grantee or other party thereto conditionally or as is said in escrow, and when delivered to a party the delivery operates at once and the condition [precedent] is unavailable" (*id.*).

It may be that the apparent tension between *Marsh v McNair* and *Blewitt v Boorum* can be reconciled. That is, the rule identified in *Blewitt* may have been a narrow one, applying only when delivery of the instrument to the grantee or other counterparty was the final legal act necessary to convey the real property. In

any event, whatever vitality the rule stated in *Blewitt* had or may continue to have, it has no application to the facts of this case.

In *Frantz v Gatto* (274 App Div 1003 [1948]), the Second Department, citing an 1851 decision of the Court of Appeals and a 1912 decision of the Second Department, stated that

> "[t]he rule announced in cases which hold that parol evidence may not be introduced to establish a conditional delivery of a contract providing for the sale of real property (cf. *Blewitt* v. *Boorum*, 142 N. Y. 357) does not prevent the introduction of such evidence in support of a contention that a conditional, or escrow, delivery was made to a person who is not a party to the agreement" (*id.* at 1003).

Accordingly, on facts strikingly similar to those presented here, the court reversed a grant of summary judgment in favor of the respondent, the party opposing proof of an oral condition precedent.

> "[I]n an action to recover upon a check alleged to have been delivered by appellants to respondent, pursuant to the terms of a contract for the sale of real property, appellants contended . . . that the contract and check were left in the office of a Florida attorney, who was acting for both respondent and appellant Thomas J. Gatto, upon the understanding that the contract would be of no force and effect and that the check would be returned if the contract should not be approved by appellants' New York attorney" (*id.*).

The "contract was not so approved," and the court concluded that "a question of fact as to the delivery and acceptance of the contract was presented . . . , which question should not have been summarily decided" (*id.*).[7]

More recent and more specific precedents contradict the majority's position. The written contract (with a merger clause) that was at issue in *Procopis* (43 AD2d 974 [1974], *supra*) was

---

7. The majority seeks to distinguish *Frantz v Gatto* by asserting that the delivery of the contract and check "was not made either to the other party or to the other party's agent." As the majority acknowledges, however, the court expressly stated that "the contract and check were left in the office of a Florida attorney, *who was acting for both respondent and appellant*" (*id.* [emphasis added]). The majority does not explain its apparent view that a person "acting for" another is not the latter's agent.

one for the sale of real estate. The purchaser's attorney testified at trial that the $10,000 down payment, given to the sellers' attorney to hold in escrow when the contract was executed, "was conditioned upon [the purchaser's] ability to arrange adequate financing" (*id*. at 975). The purchaser's attorney also testified that "he notified [the sellers'] attorney the day following the contract execution that the purchaser would not be able to arrange the financing and that the deal was thereby terminated" (*id*.). The trial court disregarded that testimony, ruling that the merger clause required it to be disregarded. Reversing the judgment in favor of the purchaser, the Second Department cited to and quoted from *Hicks v Bush* in support of its holding that "it was improper for the trial court to exclude proof that there was a condition precedent to the contract taking effect" (*id*.).[8]

Similarly, the written contract (with a merger clause) that was at issue in *Mack-Lowe* (33 AD3d 504 [2006], *supra*) was in substance one for the sale of real estate. Although this Court— the panel included the author of the majority's opinion— concluded that the oral condition precedent was not enforceable, that conclusion was not based on the fact that the written contract conveyed the seller's interest in her cooperative apartment. Rather, after rejecting the seller's reliance on the merger clause for precisely the reason stated in *Procopis*, this Court held that the oral condition precedent contradicted a specific provision of the written agreement (*id*. at 505).

That leaves only, at least with respect to the previously unrecognized exception (for real estate contracts) to the exception (for oral conditions precedent) to the parol evidence rule that the majority discovers lurking in the law, the majority's reliance on the integrated character of the written contract. But in the first place, as noted earlier, a merger clause shouts out what is only implicit in an integrated contract: the writing constitutes the entirety of the parties' agreement.[9] Accordingly, if a merger clause does not preclude recognition of an oral condition precedent, it necessarily follows that the integrated character of a written contract does not prevent recognition of an oral condition precedent.

---

**8.** As noted above, the court also ruled that "[t]he statement in the contract, in effect, that the written document embodies the agreement of the parties and may not be changed or terminated orally has no significance until there is a contract" (*id*.).

**9.** "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement" (Restatement, Contracts § 228).

Second, the majority's position is contradicted, albeit implicitly, by *Hicks v Bush*. Although the court did not expressly state that parol testimony is admissible to prove a condition precedent to the effectiveness of an integrated written agreement, it relied on Restatement of Contracts § 241 (*Hicks v Bush*, 10 NY2d at 491). Not only does section 241 expressly permit recognition of an oral condition precedent when the written agreement "purports to be an integration of a contract," but section 237 of the same Restatement expressly states that section 241 is an exception to the rule that "the integration of an agreement makes inoperative to add to or to vary the agreement all contemporaneous oral agreements relating to the same subject-matter."

Third, the majority's position is contradicted by this Court's decision in *Meadow Brook Natl. Bank v Bzura* (20 AD2d 287 [1964]). Then-Justice Breitel expressly stated that "an *integrated* written agreement may be shown not to have taken effect because of an oral condition precedent" (*id.* at 289 [emphasis added]). Moreover, before quoting at length Judge Fuld's statement of the law in *Hicks v Bush*, Justice Breitel stated that "[t]he Restatement [of Contracts] expresses the law of New York" (*id.*).[10]

Although I need not address the public policy arguments advanced by the majority, a defense of what I understand to be the rule of *Hicks v Bush* will do no harm. Unquestionably, the need "to ensure clarity and certainty, and to avoid fraud" has a strong claim on the law, and the statute of frauds is designed to protect those policy goals. Just as unquestionably, protecting those goals is particularly important in real estate transactions. But it is far from obvious that these public policy goals support the majority's exception for real estate contracts to the exception for oral conditions precedent to the parol evidence rule. The rule of *Hicks v Bush* operates to prevent enforcement of written contracts that never became legally binding because of the nonoccurrence of a condition precedent to their validity to which the parties orally agreed. The majority's position raises

10. *Thomas v Scutt* (127 NY 133 [1891], *supra*) makes clear that oral agreements that are "collateral"—i.e., "separate, independent and complete contracts, although relating to the same subject" (*id.* at 140-141)—to written contracts can be proved by parol evidence regardless of whether the written contract "appear[s] on its face to be complete" (*id.* at 140). To the extent *Thomas v Scutt* can be read to suggest that a different rule obtains when the oral agreement is not classified as "collateral," it is inconsistent with *Hicks v Bush*, the Restatement of Contracts and the other authorities discussed above.

an obvious question: How can (or why should) such a written contract that never became legally binding nonetheless be enforced if it is one for the sale of real estate? I contend only that the majority has not answered that question, not that no reasonable answer can be given.

The majority implicitly assumes that fraud and wrongdoing only can be curtailed by not recognizing an oral condition precedent exception to the parol evidence rule for real estate contracts. Thus, it takes me to task as follows:

> "The dissent's suggestion that the buyer may have been the victim of dishonesty at the hands of the seller's attorney, and that it is just such dishonesty that the *Hicks v Bush* rule was created to combat, turns this situation on its head. Avoiding dishonesty is exactly why we insist that such contracts be entirely in writing."

Of course, however, we are required to assume that the seller's attorney did make and break the oral promise alleged by the buyer. The majority hardly does justice to that obligation with its assertions that "[i]t is unusual, not to say sloppy, for one party to meet alone with the attorney for the other party" and that "it is the buyer's effort to see the seller's attorney without his own attorney that is suspect here."[11] But the more fundamental point is there is no a priori reason to assume dishonesty on the part of all parties to a written real estate contract who allege an oral condition precedent to the validity of the agreement.

---

**11.** The majority attempts to buttress the latter assertion with the hyperbolic additional claim that the buyer "attempted to bind the seller while leaving himself unbound by the contract." Similarly, the majority asserts that "the buyer took steps calculated to bind the seller to the negotiated contract terms while seeking to leave himself a right to avoid the contract entirely." Of course, however, the seller was free both to reject the proposed oral agreement and, even after accepting it, to prevent himself from becoming bound by not signing the written contract. Nor did the buyer purport to require the seller, if he did choose to sign it, to deliver an executed copy of the contract. Any suggestion by the majority that it is implausible to suppose that the seller would enter into the oral agreement is unpersuasive. It is conceivable, after all, that rejecting the proposed oral agreement would have caused the buyer to walk away and that the seller could have entertained doubts about when a new buyer would have come forward and how much the new buyer would be willing to pay. Moreover, as the buyer was not in the seller's office for a closing, it hardly seems highly implausible that the buyer would go without his own lawyer to the seller's attorney's office. In any event, whether the buyer's account is dishonest is a matter for the trier of fact.

The rule of *Hicks v Bush* is not founded on the opposite and equally indefensible assumption of honesty on the part of all parties to written contracts who allege an oral condition precedent to the validity of the agreement. Rather, the requirement that the oral condition precedent not be contradicted by the express terms of the written agreement serves to screen out claimed oral agreements that are most likely false. Are real estate contracts so different from or more important than all other contracts as to justify on public policy grounds the conclusion that this same screen would be ineffective or imprudent?

The assumption behind the statute of frauds, one I certainly do not question, is that it will prevent more fraud than it will occasion. Obviously, however, it is wrong to think that its inflexible application will not sometimes permit the unscrupulous to profit from fraud and wrongdoing. As Judge Cardozo put it in a similar context:

> "The truth is that we are facing a principle more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong (*Riggs* v. *Palmer*, 115 N. Y. 506). The Statute of Frauds was not intended to offer an asylum of escape from that fundamental principle of justice" (*Imperator Realty Co. v Tull*, 228 NY 447, 457 [1920, Cardozo, J., concurring]).

Indeed, it is the majority whose equilibrium is askew when it contends that I "turn[ ] th[e] situation on its head" by "suggest[ing]. . . that it is just such dishonesty [by the seller's attorney] that the *Hicks v Bush* rule was created to combat." Dishonesty on the part of those denying an oral agreement is indisputably one of the reasons for this ancient exception to the parol evidence rule. As noted earlier, *Marsh v McNair* explains that the exception "grew up in the equity courts from the efforts of equity judges to prevent forfeitures [and] to relieve against frauds" (99 NY at 178). Forfeiture is prevented and frauds are relieved by the exception precisely because, be it attributable to the naivete of one party or the guile of the other, oral agreements relating to written agreements can be made.

Despite the law's abhorrence of forfeitures (*Fifty States Mgt. Corp. v Pioneer Auto Parks*, 46 NY2d 573, 577 [1979]), the majority is indifferent to the prospect of that injustice in this case. If the buyer's claim is true, application of the rule of *Hicks v*

*Bush* would prevent the forfeiture of his $120,000 deposit. That indifference is inherent in the majority's position, and for that reason is all the more problematic. The rule of law the majority adopts will apply even if in a particular case the oral agreement could be proven to a certainty (or even if it is admitted) and its nonenforcement would visit a substantial forfeiture on one party while bestowing a windfall on the other.

Moreover, precisely because parties to written agreements, be they for the sale of real estate or personal property, sometimes do come to oral agreements on conditions precedent, the public policy considerations favoring freedom of contract also support what I understand the rule of *Hicks v Bush* to be (*see Miller v Continental Ins. Co.*, 40 NY2d 675, 679 [1976] ["It is well to remember too that 'the right of private contract is no small part of the liberty of the citizen, and the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy' "], quoting *Baltimore & Ohio Southwestern R. Co. v Voigt*, 176 US 498, 505 [1900]). Another point about the majority's reliance on the "need for certainty and finality" is the one made by Judge Cardozo in an analogous context: "Something, doubtless, may be said on the score of consistency and certainty in favor of a stricter standard. The courts have balanced such considerations against those of equity and fairness, and found the latter to be the weightier" (*Jacob & Youngs, Inc. v Kent*, 230 NY 239, 243 [1921]).

The rule of law the majority adopts is a simple one, and that certainly has its virtues. The parties to written contracts for the sale of real estate thereby are spared the uncertainties attendant to the application of the rule of *Hicks v Bush*; the parties and the courts are spared the costs and burdens of litigating the rule's application. But just as the majority cannot claim that only its position prevents fraud and furthers freedom of contract, it cannot claim that only its position can reap those benefits.

After all, application of the rule of *Hicks v Bush* to real estate contracts does not doom either the parties to those uncertainties or both the parties and the courts to those costs and burdens. An oral condition precedent will be recognized only "if the condition does not contradict the express terms of [the] written agreement" (*Hicks v Bush*, 10 NY2d at 491). Thus, the parties to real estate contracts are free to agree to include in

their written agreements a provision specifying that no conditions precedent exist (or that none exist other than those stated in the agreement).[12]

The parties' ability to adopt such a provision brings to mind a similar expedient that "renders . . . . simple" the rule against perpetuities:

> "The rule . . . represents an incredible labyrinth for those unwary people foolish enough to fall within its grasp. But alongside the rabbit warren created by the rule runs a four-lane superhighway, open for all to travel, in the form of a standard savings clause, easily inserted into any will or deed, that will validate just about any conceivable gift that the harried testator or loving parent cares to make" (Richard A. Epstein, Simple Rules for a Complex World, at 26 [1995]).

## D

Before addressing the majority's arguments regarding the second question, other aspects of the majority's writing should be addressed. In *Mitchill v Lath* (247 NY 377 [1928], *supra*), the court stated:

> "Under our decisions before such an oral agreement as the present is received to vary the written contract at least three conditions must exist, (1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the

---

12. Such a provision would be sufficient to bar recognition of an oral condition precedent, even though neither a merger clause nor a clause forbidding oral modifications alone would be sufficient. The express and specific contradiction between the written agreement that indisputably was made and the oral agreement that allegedly was made must be resolved in favor of the written agreement. The evident rationale of the rule of *Hicks v Bush* is that the contradiction casts too much legitimate doubt on the oral agreement and a contrary rule would cast too much illegitimate doubt on the written agreement. Although the majority believes that requiring such a provision is "unnecessarily exacting," it is not the only way to prevent recognition of an oral condition precedent. Obviously, the contradiction between an oral condition precedent and the express terms of a written agreement that will invalidate the former can be established in other ways. It would be established in this case if, for example, the written agreement expressly required either the seller to deposit the down payment check immediately or the buyer's check to be a "good check" at the time it was tendered to the seller.

writing; or put in another way, an inspection of the written contract, read in the light of surrounding circumstances must not indicate that the writing appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement" (*id.* at 380-381 [internal quotation marks omitted]).

Although the majority does not expressly rely on the third condition, it declares that "real estate sales contracts are drawn up and executed only after all terms have been negotiated and finalized and the writing is complete," that "[a]ny conditions precedent are normally included in the those written terms" and that "[r]eal estate sales contracts . . . are expected . . . to be completely set out in a writing."

As the seller makes no argument that can be construed to invoke the third condition (or, for that matter the first), it should not be a ground for affirmance (*Misicki v Caradonna*, 12 NY3d 511, 519 [2009]). In any event, at least with respect to oral agreements on conditions precedent, the foregoing statement of the law in *Mitchill v Lath* is no longer correct.[13] As discussed above, *Hicks v Bush* makes clear that an oral condition precedent can be valid even when the written contract is integrated or contains a merger clause. Accordingly, the majority's declarations do not invalidate the condition precedent. I note, too, that neither the first nor the third condition appears in the Restatement of Contracts § 241, the provision addressing the subject of oral conditions precedent that the court cited in *Hicks v Bush*. Moreover, in the paragraph of the opinion in *Hicks v Bush* in which the court states what the law is (10 NY2d at 491), the court makes no mention of the first and third conditions. Nor did the court mention either condition in *Bank of Suffolk County v Kite* (49 NY2d 827 [1980]); rather, it simply stated that "parol evidence may be admissible to prove a condition precedent to the legal effectiveness of a written agreement if the condition is not contradictory or at variance with its express terms" (*id.* at 828).[14]

---

**13.** The alleged oral agreement in *Mitchill v Lath* was not one concerning a condition precedent. Rather, the oral agreement would have imposed an additional duty of performance on the sellers (247 NY at 380).

**14.** As for the statement in *Mitchill v Lath* that the oral agreement "must not contradict express *or implied* provisions of the written contract" (247 NY at 381 [emphasis added]), *Hicks v Bush* and *Bank of Suffolk County* make clear that an oral condition precedent will be invalidated only if it is inconsis-

The majority is wrong for two reasons when it argues that because the buyer, in eliciting the oral agreement, "mentioned nothing about conditioning the enforcement or effectiveness of the contract," the "language . . . used . . . was too precatory to successfully create a condition precedent." First, the majority cites nothing in support of its position that forms of the words "conditioning" and either "enforcement" or "effectiveness" must be used to create an oral condition precedent. According to the buyer, the seller's attorney agreed to "hold the check without depositing [it] until he heard from [him]." Plainly, the intention of the parties was that the written contract would not take effect unless and until the seller's attorney heard from the buyer about the check. Although the majority contends otherwise, it does not propose an alternative reading of the oral agreement, one pursuant to which the written agreement would take effect even though the seller's attorney had not heard from the buyer about the check. Accordingly, the language used was sufficient to create a condition precedent (*cf. Manning v Michaels*, 149 AD2d 897 [1989]; *Bazak Intl. Corp. v Mast Indus.*, 73 NY2d 113, 125 [1989] ["magic words" not necessary to satisfy confirmatory writing requirement of UCC 2-201 (2)]). Second, and in any event, as this argument is one the majority has "winkled out wholly on [its] own" (*Misicki v Caradonna*, 12 NY3d at 519), it should not be a ground for affirmance (*id.*).

E

Turning at last to the second question of whether the oral condition precedent is contradicted by express terms of the written agreement, the majority's arguments are unpersuasive. According to the majority, "[t]he effect of the alleged oral condition is that the seller's attorney would, for an undefined period, hold the down payment check without depositing it until the buyer notified him that a home equity line of credit had been obtained and the check would clear." As the majority appears to recognize, the reason why the buyer sought the oral agreement (condition precedent) is not itself a term of that agreement (condition). The oral agreement is that the seller's attorney would hold the down payment check without depositing it until he heard from the buyer. Stated in terms of a condition prece-

tent with the express terms of the written agreement (*but see Long Is. Trust Co. v International Inst. for Packaging Educ.*, 38 NY2d 493, 499 [1976], *supra* [Breitel, Ch. J., dissenting] ["It is to ignore the principle and the appendant rules to assume that only explicitly contradictory oral preconditions are precluded"]).

dent, the oral condition is that the contract would not be binding until the buyer told the seller's attorney he could deposit the down payment check. The written agreement states other conditions precedent to its becoming effective, but "it is equally clear that evidence of an oral condition is not to be excluded as contradictory or inconsistent merely because the written agreement contains other conditions precedent (*Hicks v Bush*, 10 NY2d at 492 [internal quotation marks omitted]).

In any event, there is no "direct or explicit contradiction" (*Hicks v Bush*, 10 NY2d at 492) between the oral condition and the express terms of the written agreement. Although the majority relies on the contractual provision "directing the seller's attorney to place the down payment in a specified escrow account," nothing in the contract required the deposit to be placed into the escrow account as soon as it was tendered by the buyer. Nor, as noted earlier, does the agreement purport to require the contract to be transmitted to the seller for his signature as soon as the buyer signed and tendered a check for the down payment.

To be sure, the contract provides for the down payment to be made by the buyer's "good check." But for at least two reasons, no "explicit contradiction" exists. First, the oral agreement itself (not to deposit the check until the buyer gave his go ahead) is not inconsistent with the check being a "good check." Second, nothing in the written agreement requires, expressly or otherwise, that the buyer's check be negotiable when or on the day it is tendered. As for the provision "giving only the seller the option to choose to void the contract in the event a check fails of collection," the oral agreement does not deprive the seller of that option. If the buyer gave his go ahead and the check nonetheless failed, the seller and only the seller would have that option.

Contrary to the majority, the buyer's contractual representation that he "had sufficient assets to complete the purchase" is not contradicted by the oral agreement. If, for example, the check cleared after the buyer gave his go ahead but the buyer was not able for any reason to obtain all the necessary financing, the oral agreement would not relieve the buyer of any of the legal consequences of that representation. Thus, no financing contingency relieving the buyer of liability was created. Accordingly, the oral condition precedent does not even contradict the extrinsic evidence that, as the majority puts it, "the parties deleted from the standard form its entire mortgage financing contingency provision, so that the final agreement contained

nothing that conditioned the buyer's obligations on his ability to obtain financing."

The majority's key error is failing to appreciate that the tension or "disparity" that is "inevitable . . . whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing" (*Hicks v Bush*, 10 NY2d at 491) cannot be equated with the "direct or explicit contradiction" between the oral condition and an express term of the written agreement that will invalidate the former. In sum, there is no necessary conflict between the oral condition and the express terms of the written contract, i.e., the oral and written terms "may stand by side" (*id.* at 492).

Finally, the majority notes that the buyer "was not without options" and, positing another course he could have taken, apparently concedes that an oral agreement to "postpone[ ] signing and handing over the contract and down payment" would have been enforceable. Such an agreement does not differ in substance from the one to which, according to the buyer, he and the seller orally agreed. If the seller could not disavow with impunity the posited agreement, he should not be permitted to disavow the agreement he, through his attorney, actually made. Why the majority reproaches the buyer for seeking an agreement to which the buyer assented is unclear. As noted earlier, moreover, the majority errs in asserting that the buyer "took steps calculated to bind the seller to the negotiated contract terms while seeking to leave himself a right to avoid the contract entirely."

As there is a material issue of fact over whether the seller (through his attorney) agreed to hold the down payment check, the seller's motion for summary judgment on liability under the contract should have been denied. Because my view that the alleged oral condition is enforceable does not command a majority, I see no point in considering the merits of the buyer's motion to disqualify the seller's attorney. I otherwise agree with the majority, including its determination that the court properly declined to impose sanctions against the buyer and his counsel.

MOSKOWITZ and ACOSTA, JJ., concur with SAXE, J.P.; CATTERSON and McGUIRE, JJ., dissent in a separate opinion by McGUIRE, J.

Order, Supreme Court, New York County, entered November 3, 2008, affirmed, without costs.